**Duke Thomas NGUYEN, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 14–06–00043–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

March 1, 2007.

David Suhler, Houston, for Appellant.

Donald W. Rogers Jr., Houston, for State.

Panel consists of Chief Justice HEDGES and Justices FOWLER and EDELMAN.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellant, Duke Thomas Nguyen, was charged by indictment with the felony offense of making a false statement to obtain credit. The indictment included two final convictions for felony theft, included for purposes of enhancement of appellant's punishment. Appellant pleaded guilty to the charge in the indictment and true to each enhancement allegation. A presentence investigation report was prepared and a punishment hearing conducted, at which the trial court found appellant guilty of the offense alleged, found the enhancement allegations true, and sentenced appellant to forty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Ten days later, appellant filed a pro se written notice of appeal and indigency, which stated in part that appellant had not been represented by counsel since sentencing. Appellant was not appointed counsel to assist in his appeal until thirty-two days after his sentencing.

Appellant presents two issues for review. First, he claims that he was denied counsel at a critical stage of the proceed-

ings, claiming that he did not have counsel during the period when he could have filed a motion for new trial. Second, he claims that the trial court erred by not *sua sponte* ordering that a psychological evaluation be included in the presentencing investigation report. Because we find that appellant has not overcome the presumption that he was represented by counsel and that counsel acted effectively, and because appellant did not object in the trial court to the lack of a psychological evaluation, we affirm.

## I. Appellant Fails to Rebut Presumption of Representation

### A. The Case Law Defines Appellant's Rights and Creates a Rebuttable Presumption of Representation

 The right to counsel is fundamental in our justice system, and it applies at every critical stage of a proceeding. *Trevino v. State*, 565 S.W.2d 938, 940 (Tex. Crim.App.1978). Though the Court of Criminal Appeals has not ruled on the subject, this court has held that the time period for filing a motion for new trial is a critical stage. *Oldham v. State*, 889 S.W.2d 461, 462 (Tex.App.-Houston [14th Dist.] 1994), *rev'd on other grounds*, 977 S.W.2d 354 (Tex.Crim.App.1998).

 To prevail on a claim of deprivation of counsel during the time to file a motion for new trial, appellant must affirmatively prove that he was not represented by counsel during this critical stage. *Hanson v. State*, 11 S.W.3d 285, 288 (Tex. App.-Houston [14th Dist.] 1999, pet ref'd). A rebuttable presumption exists that the appellant was represented by counsel and that counsel acted effectively. *See Oldham v. State*, 977 S.W.2d 354, 363 (Tex. Crim.App.1998). This presumption arises, in part, because appointed counsel remains as the defendant's counsel for all purposes until expressly permitted to withdraw, even if the appointment is for trial only.

*Hanson*, 11 S.W.3d at 288 (citing *Ward v. State*, 740 S.W.2d 794, 796 (Tex.Crim.App. 1987)). When a motion for new trial is not filed, courts apply a rebuttable presumption that the attorney discussed the merits of the motion for new trial with the appellant, and the appellant rejected it. *Oldham*, 977 S.W.2d at 363. The Court of Criminal Appeals indicated that appropriate rebuttal evidence would show that "trial counsel thought that his duties were completed with the end of trial, and had thereafter abandoned the appellant." *Id.* Under *Oldham* and its progeny, an appellant's statement that he has not been represented since sentencing is not enough to rebut the presumption of effective assistance. *See id.* at 363; *Smith v. State*, 17 S.W.3d 660, 662–63 (Tex.Crim.App.2000). Appellant must also show that counsel did not confer with him regarding the merits of filing of a motion for new trial. *See Smith*, 17 S.W.3d at 663. Appellant has made no such showing here.

### B. The Circumstances of this Case Do Not Overcome the Rebuttable Presumption

 Appellant attempts to distinguish this case from *Oldham* and *Smith* by pointing out that his trial counsel approved a document reflecting that appellant had waived his right to appeal, when appellant had not. Appellant claims this is evidence of counsel's confusion regarding appellant's post-sentencing rights, and that this, combined with the statement in his pro se notice of appeal that he had been without counsel since sentencing, sufficiently rebuts the presumption that he was properly counseled concerning his post-sentencing rights. For several reasons this argument does not overcome the presumption. The fact that counsel may have been confused at some point regarding whether appellant waived his right of appeal does not neces-

sarily prove that counsel did not advise appellant regarding his right to file a motion for new trial. The two events—a motion for new trial and a notice of appeal—are different enough in character that confusion concerning one does not prove neglect of the other. In the absence of evidence to the contrary, we presume that appellant was advised of his right to file a motion for new trial, and decided not to file such a motion.

Appellant also attempts to liken this case to several cases in which courts of appeals have found the presumption of effective assistance rebutted. Courts of appeal have deviated from *Oldham* when trial counsel actually moved to withdraw before the thirty-day window to file a motion for new trial had expired. Such a withdrawal, indicating that work remains to be done for the client, is enough for these courts to rebut the presumption that an attorney has counseled his client regarding a motion for new trial and the client has rejected the tactic. *See Blumenstetter v. State*, 117 S.W.3d 541, 546–47 (Tex.App.-Texarkana 2003, no pet.); *Massingill v. State*, 8 S.W.3d 733, 736–38 (Tex. App.-Austin 1999, no pet.). Appellant also cites to a case in which the defendant filed a pro se motion for new trial. *See Champion v. State*, 82 S.W.3d 79, 83–84 (Tex. App.-Amarillo 2002, pet. ref'd). In such a situation, clearly the client did not reject the notion of filing a motion for new trial following a consultation with his attorney. *See id.* at 83. Besides the fact that none of these cases are binding precedent, none of the facts that distinguish these cases are present here. Trial counsel did not formally withdraw, and appellant did not file a pro se motion for new trial. Thus, none of the cited case law helps to distinguish this case from *Oldham* and *Smith*. We overrule appellant's first issue.

## II. Psychological Evaluation

We turn now to appellant's complaint that the trial court erred by not including a psychological evaluation in the PSI.

### A. Error Was Waived

Before we reach the merits of appellant's complaint, we consider the State's claim that appellant waived any error by not objecting below. No published decision has considered whether a defendant can waive his right to have a psychological evaluation included in the PSI. As we explain below, we conclude that this right can be waived and that appellant waived his right.

#### 1. Why Error is Waivable

First, since the Court of Criminal Appeals issued *Marin v. State*, 851 S.W.2d 275 (Tex.Crim.App.1993), in which it discussed the three categories of rights in our court system, courts of appeal have held that the right to a PSI generally is forfeited when a party fails to request a PSI if none was prepared. *See Summers v. State*, 942 S.W.2d 695, 696–97 (Tex.App.-Houston [14th Dist.] 1997, no pet.); *Holloman v. State*, 942 S.W.2d 773, 776 (Tex. App.-Beaumont 1997, no pet.); *Wright v. State*, 873 S.W.2d 77, 83 (Tex.App.-Dallas 1994, pet. ref'd).

A psychological evaluation is merely part of a PSI. *See* Tex.Code Crim. Proc. art. 42.12, § 9(i) (when a psychological evaluation is prepared, it should be included as part of the PSI). If the defendant can waive his right to object that no PSI was prepared, it logically follows that a defendant can waive the right to complain about a part of the PSI being left out. The right to *a part* of the whole should not be given more protection than the right to the whole.

Second, the right to a psychological evaluation under section 9(i) is analo-

gous to the right to an alcohol and drug evaluation under section 9(h); the same type of directory language is used. At least three of the intermediate appellate districts have held that a defendant who failed to object at trial waived the right to complain on appeal that an alcohol and drug evaluation was not included in the PSI. *See, e.g., Alberto v. State*, 100 S.W.3d 528, 529 (Tex.App.-Texarkana 2003, no pet.); *see also Schmidt v. State*, No. 14–97–00945–CR, 1999 WL 394816, at *1 (Tex. App.-Houston [14th Dist.] June 17, 1999, no pet.) (not designated for publication); *Ladet v. State*, No. 01–96–00887, 1998 WL 23095, at *1 (Tex.App.-Houston [1st Dist.] Jan. 8, 1998, no pet.) (not designated for publication). In short, we hold that the failure to object at trial results in waiver on appeal of the trial court's error in not ordering a psychological evaluation.

### 2. Why Appellant Waived Error

 We now consider whether appellant waived any error in the court below. After the judge ordered a PSI, but before it was completed, appellant's counsel informed the judge, by way of motions to determine competency and sanity, that appellant had been diagnosed as bipolar and that he had tried to commit suicide. The judge ordered both a competency evaluation and a sanity evaluation. Although both evaluations were comprehensive, neither contained an IQ or adaptive behavior score.[1]

Appellant failed to object at or after the sentencing hearing to the court's failure to order a report under section 9(i), or to the failure of the competency and sanity evaluations to contain either an IQ score or an

adaptive behavior score. Because counsel failed to bring the court's attention to these alleged inadequacies of the PSI, any error is waived. *See* Tex.R.App. P. 33.1(a).

### B. If Section 9(i) Is Not Subject to Waiver, Any Error Was Harmless

 We forego the analysis of whether failing to order the inclusion of a psychological evaluation in the PSI was error, because even if the trial court erred, any error is harmless. Any non-constitutional error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. *See id.* 44.2(a), (b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim.App.1997). If, on the record as a whole, it appears the error did not influence the verdict, or had but a slight effect, we must consider the error harmless and allow the conviction to stand. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998).

To begin with, we must acknowledge that two psychological evaluations—a sanity evaluation and a competency evaluation—were in front of the court at sentencing. Although they were not in the PSI itself, the court had them before it and presumably considered them with the information contained in the PSI. As long as the evaluations were before the court at sentencing, it is inconsequential whether they were part of the PSI or separate from it.

Second, the competency and sanity evaluations were comprehensive. It appears to us that the only relevant information

---

1. The statute provides that, "A presentence investigation conducted on any defendant convicted of a felony offense who appears to the judge through its own observation or on suggestion of a party to have a mental impair-

ment shall include a psychological evaluation which determines, at a minimum, the defendant's IQ and adaptive behavior score." Tex. Code Crim. Proc. art. 42.12, § 9(i).

not specifically included, although required by article 42.12, section 9(i), is an IQ score and an adaptive behavior score. For purposes of a PSI, which is prepared to assist the court in setting punishment, we presume IQ is relevant primarily if the defendant has a below-normal IQ.[2] In the great majority of cases, an average or above-average IQ will not impact the punishment assessed. However, a below-average IQ may cause a judge to impose a lesser punishment than she would have if the IQ was normal. While the psychologist who examined appellant did not administer an IQ test, his evaluations were comprehensive enough to enable him to assess appellant's relative intelligence and capacity for clear thought. He would know if appellant had a below-normal IQ, and he did not declare or imply that appellant had a below-normal IQ.

The written evaluations themselves were each nearly three single-spaced pages, containing information regarding appellant's general demeanor during his interview, his education, his prior military service, his medical status, his current legal circumstances, and information regarding his state of mind during the interview. The reports convey the sense that appellant responded appropriately to his situation, cooperating and eagerly sharing his perceptions of his case. They also reflect that appellant studied aerospace engineering, electrical engineering and political science at Texas A & M University, and lacked only nine elective hours to earn his degree from A & M. He served in the Marine Corps during Desert Storm, and was honorably discharged. The reports discuss the fact that appellant takes several anti-depressants and one anti-psychotic medi-cation, but the reports also indicate that appellant's thought processes were coherent and goal-oriented, and that his intellectual abilities appeared to be intact, as he was able to clearly articulate his perceptions and concerns.

Though we cannot tell how long the evaluations lasted, we know that the psychologist met in person with the appellant. Based on the information contained in the reports, the psychologist would have been able to assess at a minimum if appellant had a below-average IQ. However, nothing in either report indicates a below-normal IQ. In fact, as mentioned above, the reports give several indicia that appellant was both intelligent and thinking clearly. It appears to us that the reports gave the court much, if not all, of the same information the court would have received from an IQ score.

The term "adaptive behavior score" is not defined in the Code of Criminal Procedure, although the term "adaptive behavior" is defined in the Health & Safety Code, under Title 7, entitled "Mental Health and Mental Retardation." *See* Tex. Health & Safety Code § 591.003. It means, "the effectiveness with or degree to which a person meets the standards of personal independence and social responsibility expected of the person's age and cultural group."[3] *Id.* § 591.003(1). The American Association on Intellectual and Developmental Disabilities (formerly the American Association on Mental Retardation) has identified ten areas of adaptive behavior: communication, home living, self-care, health and safety, self-direction, community use, leisure, functional academics, work, and social skills. Samuel J. Meisels et al.,

---

**2.** We must presume this because section 9(i) does not state why an IQ score is required.

**3.** The Code Construction Act permits the borrowing of a definition for an undefined term

where such "[w]ords and phrases ... have acquired a technical or particular meaning, whether by legislative definition or otherwise." Tex. Gov't Code § 311.011.

ASSESSMENT OF SOCIAL COMPETENCE, ADAPTIVE BEHAVIORS, AND APPROACHES TO LEARNING WITH YOUNG CHILDREN, 37 (1996), http://nces.ed.gov/pubs96/9618.pdf. The most popular methods of evaluating adaptive behavior involve interviews or questionnaires aimed at eliciting information about these areas of behavior. *See id.*

The psychologist's interview of appellant, while not a detailed questionnaire, certainly would have given such a trained professional ample opportunity to note any adaptive behavioral deficiencies. He had opportunity to judge appellant's communication and social skills, and the report indicates that the psychologist found appellant to behave appropriately throughout the interview. He also discussed home life, health issues, academics and work experiences with appellant. Nowhere in either the competency report or the sanity report does the psychologist indicate that appellant's adaptive behavior might be anything less than normal. Due to the information contained in these reports, the information contained in an adaptive behavior score would have been largely redundant and of little use to the trial court.

In sum, the reports before the judge satisfied the minimal requirements of a section 9(i) psychological evaluation, and, in fact, supplied more than the minimal requirements. As a result, we conclude that even if error were not waived, any error was harmless. Appellant's second issue is overruled.

## Conclusion

Having overruled both of appellant's issues, we affirm the judgment of the trial court.