**Nathaniel Dwayne WELCH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–09–01020–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 11, 2011.

Winston E. Cochran, Jr., Houston, for appellant.

Eric Kugler, Houston, for state.

Panel consists of Justices SEYMORE, BOYCE, and CHRISTOPHER.

## SUBSTITUTE OPINION

TRACY CHRISTOPHER, Justice.

Our opinion dated November 23, 2010 is hereby withdrawn, and we issue this substitute opinion.

In this appeal, we examine whether a recent decision from the U.S. Supreme Court enlarges the duty of the trial court to ensure that all mitigating evidence is fully developed during sentencing. Finding no support for the proposition under the cited authority, we overrule appellant's sole issue and affirm the judgment below.

## BACKGROUND

On the night of July 7, 2008, appellant Nathaniel Dwayne Welch and two other men robbed a Whataburger in southeast Houston. Appellant secured the dining area of the restaurant while the other two forced the manager to open the safe. Wielding a shotgun at point-blank range, appellant threatened to kill several patrons if they did not hand over their wallets. In one instance, appellant even used the butt of his weapon to strike a patron. The robbers left without any shots being fired, but police pursued the getaway vehicle, eventually apprehending all of the suspects when their car flipped into a bayou. Appellant confessed to the crime and pleaded guilty to a charge of aggravated robbery. At the time of the offense, he was seventeen years old.

Appellant elected to have punishment assessed by the trial judge. During the sentencing hearing, appellant objected to statements in the presentence investigation report indicating that he was "in good physical health" and "never ... sought or

received psychiatric or psychological evaluation or counseling." Appellant claimed that his medical records revealed a "serious head trauma at age three" and a long psychiatric history of delusions, hallucinations, psychosis, depression, and bipolar disorder.[1] Appellant did not specifically request that the trial court order further psychological evaluations.

In his presentation of mitigating evidence, appellant testified that he fell down a flight of stairs when he was a child. To this day, appellant has a metal plate in his head because of the injuries sustained. Appellant also testified as to his troubled childhood. He said that he often transferred between schools and struggled with reading. He said that his father was largely absent. For a period of time, he lived on his own with just his half-brother, when both were beneath the age of fourteen. Finally, appellant testified that his mother killed a beloved aunt in a car accident, causing the family to "fall apart."

At the close of the hearing, the trial judge made the following comment:

> It is a bad aggravated robbery. I'm going to take into account your information I heard on this date.... I'm not sure of the State's position on the metal plate. I believe there is a metal plate, stuff's in the record and I don't know what problems mental health caused but aside from that, there are [a] lot of people in this world—most people with mental health problems who do not go in places with shotguns and the fact of the matter is there are aggravated robbers who stand there far away from people not telling them they're going to kill them. It's hard to measure different aggravated robberies and compare them to one another. I still think this is a

very, very bad one. Thank God it did not go any worse than it did.

The trial judge then sentenced appellant to fifteen years' imprisonment, out of a possible five years to life. In his only issue on appeal, appellant contends a new punishment hearing is required to further explore the mitigating effect of his mental health.

## DISCUSSION

Appellant relies principally on *Graham v. Florida*, — U.S. ——, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), for the authority that the trial court should have compelled further investigation into his mental health. In *Graham*, the Supreme Court determined that the Eighth Amendment proscribes a sentence of life without parole for a juvenile offender convicted of a non-homicide offense. *Id.* at 2034. According to appellant, *Graham* has deeper ramifications. He argues the *Graham* Court adopted an unexpected approach to its proportionality review, and that the decision consequently alters the Eighth Amendment's sentencing standards so as to require that trial courts ensure the complete development of mitigating evidence. We find no support for appellant's proposition in *Graham*, but because the argument turns on an alleged departure from precedent, we begin our analysis with a short description of the Supreme Court's Eighth Amendment jurisprudence.

### I. Proportionality Review Before *Graham*

The Eighth Amendment prohibits the imposition of cruel and unusual punishments. U.S. Const. amend. VIII. In addition to proscribing specific "modes" of punishment, *see, e.g., Weems v. United States*, 217 U.S. 349, 382, 30 S.Ct. 544, 54 L.Ed.

---

**1.** Our limited record can neither confirm nor refute appellant's assertion that these medical records were admitted into evidence at a previous hearing on a motion for new trial.

793 (1910), the Supreme Court has recognized that the Amendment encompasses a "narrow proportionality principle" that the punishment should be graduated to the offense. *Harmelin v. Michigan*, 501 U.S. 957, 997, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring in part and concurring in judgment). Before *Graham*, cases implicating this principle developed primarily along two analytical tracks, one for sentences of capital punishment and the other for a term of years.

### A. Capital Cases

In the capital context, the Supreme Court has required proportionality only to the extent that the death penalty is confined "to a narrow category of the most serious crimes ... [and] only the most deserving of execution." *Atkins v. Virginia*, 536 U.S. 304, 319, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). Under this categorical approach, the Court has found capital punishment impermissible for all nonhomicide crimes committed against individuals. *E.g., Kennedy v. Louisiana*, 554 U.S. 407, 128 S.Ct. 2641, 2664, 171 L.Ed.2d 525 (2008) (rape of a child); *Coker v. Georgia*, 433 U.S. 584, 600, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977) (rape of an adult woman); *see also Enmund v. Florida*, 458 U.S. 782, 801, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) (felony murder where the accused did not kill, intend to kill, or attempt to kill). Likewise, the Court has found the death penalty categorically disproportionate when applied to those who, because of their individual characteristics, cannot be counted among that class of "worst offenders." *E.g., Roper v. Simmons*, 543 U.S. 551, 569, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (juveniles under 18); *Atkins*, 536 U.S. at 321, 122 S.Ct. 2242 (the mentally retarded); *Thompson v. Oklahoma*, 487 U.S. 815, 838, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988) (plurality opinion) (juveniles under 16); *Ford v. Wainwright*, 477 U.S. 399, 410, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (the insane).

In reaching these categorical determinations, the Court has examined Eighth Amendment challenges for the central question of whether the imposition of our ultimate sanction comports with "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (plurality opinion). The analysis begins with a consideration of the "objective indicia of society's standards, as expressed in legislative enactments and state practice." *Roper*, 543 U.S. at 563, 125 S.Ct. 1183. If the Court finds a national consensus against the sentencing practice at issue, the Court then exercises its own independent judgment to determine whether the punishment violates the Constitution. *Id.* at 564, 125 S.Ct. 1183. This judgment is guided by "standards elaborated by controlling precedents" and the prevailing principle that the death penalty must be reserved for only the worst of crimes and the worst of offenders. *Kennedy*, 128 S.Ct. at 2650.

Even where capital punishment is proportionate in the abstract, the Supreme Court has required additional safeguards in the method of sentencing. Because the death penalty is "unique in its total irrevocability," *Furman v. Georgia*, 408 U.S. 238, 306, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (Stewart, J., concurring), the Court has said that justice requires individualized consideration of mitigating evidence during sentencing. *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (plurality opinion). Accordingly, mandatory death penalty schemes are no longer tolerated; the sentencer must first determine that capital punishment is appropriate in light "of the character and record of the individual offender and the circumstances of the partic-

ular offense." *Id.* at 304, 96 S.Ct. 2978; *see also Penry v. Lynaugh,* 492 U.S. 302, 319, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), *abrogated on other grounds by Atkins,* 536 U.S. 304, 122 S.Ct. 2242; *Eddings v. Oklahoma,* 455 U.S. 104, 112–15, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio,* 438 U.S. 586, 606–09, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion).

### B. Noncapital Cases

Proportionality review in the noncapital context has followed a different analytical approach. Recognizing that a term of years is different in kind from the death penalty, the Supreme Court has largely deferred to the sentencing schemes devised by the nation's legislatures. *See Rummel v. Estelle,* 445 U.S. 263, 283 n. 27, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). Instead of applying categorical rules, the Court will only consider whether a prison sentence violates the Eighth Amendment if "comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin,* 501 U.S. at 1005, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in judgment). Upon meeting that threshold inference, the Court will then compare the challenged sentence against (1) the sentences of other offenders in the same jurisdiction, and (2) the sentences imposed for the same crime in other jurisdictions. *Id.; see also Solem v. Helm,* 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). The sentence is only cruel and unusual if this comparative analysis "validate[s] an initial judgment that [the] sentence is grossly disproportionate to [the] crime." *Harmelin,* 501 U.S. at 1005, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in judgment).

Unlike challenges in the capital context, the Eighth Amendment does not similarly require individualized sentencing for a term of years. *Id.* at 994–95, 111 S.Ct. 2680 (majority opinion). The Supreme Court has drawn the line at death; for all other punishments—even life without parole—mandatory sentencing schemes that preclude the presentation of mitigating evidence are entirely permissible. *Id.* at 996, 111 S.Ct. 2680.

### II. The Effect of *Graham*

Prior to *Graham,* the two tracks of the Court's proportionality jurisprudence remained strictly discrete. Indeed, the Court refused to apply its categorical approach in the noncapital context: "Because a sentence of death differs in kind from any sentence of imprisonment, no matter how long, our decisions applying the prohibition of cruel and unusual punishments to capital cases are of limited assistance in deciding the constitutionality of [a term of years]." *Rummel,* 445 U.S. at 272, 100 S.Ct. 1133. Nevertheless, when faced with the issue of whether juveniles could be sentenced to life without parole for a nonhomicide offense, the *Graham* Court declined to follow the proportionality standard announced in *Harmelin,* favoring instead the methodology employed in its capital jurisprudence. *Graham,* 130 S.Ct. at 2023 ("[T]he appropriate analysis is the one used in cases that involved the categorical approach, specifically *Atkins, Roper,* and *Kennedy.*"); *see also id.* at 2046 (Thomas, J., dissenting) ("For the first time in its history, the Court declares an entire class of offenders immune from a noncapital sentence using the categorical approach it previously reserved for death penalty cases alone.").

■ Appellant does not contest the excessiveness or proportionality of his sentence under *Graham.* Rather, he argues that *Graham* redrew the line in regards to individualized sentencing because the Court applied the categorical approach—

which requires consideration of the offender's characteristics and the circumstances of the offense—in a context where, traditionally, the Constitution has not mandated the factoring of mitigating evidence. In support of his proposition, appellant directs us to the following passage from *Graham:* "In accordance with the constitutional design, the task of interpreting the Eighth Amendment remains our responsibility. The judicial exercise of independent judgment requires consideration of the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question." *Id.* at 2026 (majority opinion) (citation and internal quotation omitted).

Appellant argues that this passage establishes what he deems the "*Graham* safety net function." Under this idea, reviewing courts can only exercise their independent judgment if they have an adequate record of the individual offender to consider. The argument follows, therefore, that "it becomes the trial court's responsibility to insure [sic] that mitigating factors are adequately identified and developed for the benefit of the punishment-stage factfinder." We disagree with appellant's construction of *Graham*.

The quoted passage and its reference to the offender's "characteristics" do not, as appellant suggests, address the need for mitigating evidence to be fully developed during sentencing. Instead, the passage clearly alludes to the second step in the Court's categorical analysis. Before *Graham*, that step tested the appropriateness of the death penalty by ensuring either (1) the crime committed was a homicide offense, or (2) the offender was a member of the class "most deserving of execution." *Atkins,* 536 U.S. at 319, 122 S.Ct. 2242. Not surprisingly, the quoted passage is situated at the beginning of the Court's

discussion of whether juveniles, as a class, are deserving of the second most severe punishment under the law. *See Graham,* 130 S.Ct. at 2026–30 (examining whether legitimate penological goals are served by a sentence of life without parole for juvenile offenders). Nowhere else does the Court elaborate on the meaning of "characteristics" or intimate that its analysis is influenced by any factor other than the offender's juvenile status. We find no reason to infer from the Court's analysis that trial courts must scrutinize the universe of mitigating factors that might remain undiscovered in the case.

The procedural facts of *Graham* support our understanding of its limited implications. Because the offender in *Graham* was not punished pursuant to a mandatory sentencing scheme, he had the opportunity to produce evidence of mitigating circumstances during his sentencing hearing. *See id.* at 2018–19. Accordingly, the Court was not required to revisit the question of whether the Eighth Amendment mandates individualized consideration for a term of years sentence. *Cf. Harmelin,* 501 U.S. at 994–95, 111 S.Ct. 2680 (rejecting claim that mandatory life sentence required consideration that offender had no prior felony record). Therefore, discussion of a constitutional rule regarding mitigating evidence is conspicuously absent from the decision, and we do not find merit in the argument that *Graham* implicitly established appellant's proposed rule.

### III. Texas Statutory Duty

Although appellant has not argued any statutory basis for relief, we note that the Code of Criminal Procedure contains the following mechanism for ensuring that a defendant's mental condition is adequately considered during sentencing:

A presentence investigation conducted on any defendant convicted of a felony offense who appears to the judge

through its own observation or on suggestion of a party to have a mental impairment shall include a psychological evaluation which determines, at a minimum, the defendant's IQ and adaptive behavior score. The results of the evaluation shall be included in the report to the judge as required by Subsection (a) of this section.

Tex.Code Crim. Proc. Ann. art. 42.12, § 9(i) (West 2010).

 Appellant's presentence investigation report does not indicate that a psychological evaluation was ever conducted, and appellant does not specifically complain on appeal that the trial court erred in failing to order one. Assuming *arguendo* that appellant has raised any claim involving his right to a psychological evaluation, we would still conclude that appellant is not entitled to relief under the statute. Under the presumption of regularity, we must presume that the trial court would have ordered a psychological evaluation had it observed that appellant was suffering from a mental impairment. *Cf. Wright v. State*, 873 S.W.2d 77, 80 (Tex.App.-Dallas 1994, pet. ref'd). Though the record may contain evidence that appellant has a metal plate in his head, the trial court claimed that it was unable to attribute the cause of the offense to appellant's mental health. On these facts, we do not question whether the trial court had a duty to order an evaluation *sua sponte*. Likewise, we do not question whether this duty arose upon the "suggestion of a party." The right to a psychological evaluation may be forfeited, just as the right to a presentence investigation generally. *Summers v. State*, 942 S.W.2d 695, 696–97 (Tex.App.-Houston [14th Dist.] 1997, no pet.). To preserve error, a party must specifically object to the omission of a psychological evaluation from the presentence investigation report. *Nguyen v. State*, 222 S.W.3d 537, 542 (Tex.

App.-Houston [14th Dist.] 2007, pet. ref'd). Because appellant only challenged inaccuracies in the report, rather than objecting to the trial court's failure to order a psychological evaluation, any error was waived on appeal. *Id.*

### CONCLUSION

Appellant argues that he is entitled to a new punishment hearing because the trial court ignored its duty to ensure that mitigating evidence of his mental health was fully developed. Because we believe no such duty exists under *Graham* and because appellant has waived any relief under Article 42.12, we overrule appellant's sole issue and affirm the judgment of the trial court.