Opinion of November 23, 2010, Withdrawn, Affirmed and Substitute Opinion
filed January 11, 2011.

 

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-01020-CR

___________________

 

Nathaniel Dwayne Welch,
Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 248th District Court

Harris County,
Texas



Trial Court Cause No. 1173927

 



 

 

SUBSTITUE  OPINION

Our opinion dated
November 23, 2010 is hereby withdrawn, and we issue this substitute opinion.

In this appeal, we
examine whether a recent decision from the U.S. Supreme Court enlarges the duty
of the trial court to ensure that all mitigating evidence is fully developed
during sentencing. Finding no support for the proposition under the cited
authority, we overrule appellant’s sole issue and affirm the judgment below.

BACKGROUND

On the night of July 7,
2008, appellant Nathaniel Dwayne Welch and two other men robbed a Whataburger
in southeast Houston. Appellant secured the dining area of the restaurant while
the other two forced the manager to open the safe. Wielding a shotgun at point-blank
range, appellant threatened to kill several patrons if they did not hand over
their wallets. In one instance, appellant even used the butt of his weapon to
strike a patron. The robbers left without any shots being fired, but police
pursued the getaway vehicle, eventually apprehending all of the suspects when
their car flipped into a bayou. Appellant confessed to the crime and pleaded
guilty to a charge of aggravated robbery. At the time of the offense, he was
seventeen years old. 

Appellant elected to
have punishment assessed by the trial judge. During the sentencing hearing,
appellant objected to statements in the presentence investigation report
indicating that he was “in good physical health” and
“never . . . sought or received psychiatric or psychological
evaluation or counseling.” Appellant claimed that his medical records revealed
a “serious head trauma at age three” and a long psychiatric history of
delusions, hallucinations, psychosis, depression, and bipolar disorder.[1] Appellant did not
specifically request that the trial court order further psychological
evaluations.

In his presentation of
mitigating evidence, appellant testified that he fell down a flight of stairs
when he was a child. To this day, appellant has a metal plate in his head because
of the injuries sustained. Appellant also testified as to his troubled
childhood. He said that he often transferred between schools and struggled with
reading. He said that his father was largely absent. For a period of time, he
lived on his own with just his half-brother, when both were beneath the age of
fourteen. Finally, appellant testified that his mother killed a beloved aunt in
a car accident, causing the family to “fall apart.”

At the close of the
hearing, the trial judge made the following comment:

It is a bad aggravated robbery. I’m going to take into
account your information I heard on this
date . . . . I’m not sure of the State’s position on
the metal plate. I believe there is a metal plate, stuff’s in the record and I
don’t know what problems mental health caused but aside from that, there are
[a] lot of people in this world—most people with mental health problems who do
not go in places with shotguns and the fact of the matter is there are
aggravated robbers who stand there far away from people not telling them
they’re going to kill them. It’s hard to measure different aggravated robberies
and compare them to one another. I still think this is a very, very bad one.
Thank God it did not go any worse than it did. 

The trial judge then
sentenced appellant to fifteen years’ imprisonment, out of a possible five
years to life. In his only issue on appeal, appellant contends a new punishment
hearing is required to further explore the mitigating effect of his mental
health. 

DISCUSSION

Appellant relies
principally on Graham v. Florida, 130 S. Ct. 2011 (2010), for the
authority that the trial court should have compelled further investigation into
his mental health. In Graham, the Supreme Court determined that the
Eighth Amendment proscribes a sentence of life without parole for a juvenile
offender convicted of a nonhomicide offense. Id. at 2034. According to
appellant, Graham has deeper ramifications. He argues the Graham Court
adopted an unexpected approach to its proportionality review, and that the
decision consequently alters the Eighth Amendment’s sentencing standards so as
to require that trial courts ensure the complete development of mitigating
evidence. We find no support for appellant’s proposition in Graham, but
because the argument turns on an alleged departure from precedent, we begin our
analysis with a short description of the Supreme Court’s Eighth Amendment
jurisprudence. 

I.         Proportionality
Review Before Graham

The Eighth Amendment
prohibits the imposition of cruel and unusual punishments. U.S. Const. amend.
VIII. In addition to proscribing specific “modes” of punishment, see, e.g.,
Weems v. United States, 217 U.S. 349, 382 (1910), the Supreme Court has
recognized that the Amendment encompasses a “narrow proportionality principle”
that the punishment should be graduated to the offense. Harmelin v. Michigan,
501 U.S. 957, 997 (1991) (Kennedy, J., concurring in part and concurring in
judgment). Before Graham, cases implicating this principle developed
primarily along two analytical tracks, one for sentences of capital punishment
and the other for a term of years.

A.        Capital Cases

In the capital context,
the Supreme Court has required proportionality only to the extent that the
death penalty is confined “to a narrow category of the most serious
crimes . . . [and] only the most deserving of execution.” Atkins
v. Virginia, 536 U.S. 304, 319 (2002). Under this categorical approach, the
Court has found capital punishment impermissible for all nonhomicide crimes
committed against individuals. E.g., Kennedy v. Louisiana, 128 S.
Ct. 2641, 2664 (2008) (rape of a child); Coker v. Georgia, 433 U.S. 584,
600 (1977) (rape of an adult woman); see also Enmund v. Florida, 458
U.S. 782, 801 (1982) (felony murder where the accused did not kill, intend to
kill, or attempt to kill). Likewise, the Court has found the death penalty
categorically disproportionate when applied to those who, because of their
individual characteristics, cannot be counted among that class of “worst
offenders.” E.g., Roper v. Simmons, 543 U.S. 551, 569 (2005)
(juveniles under 18); Atkins, 536 U.S. at 321 (the mentally retarded); Thompson
v. Oklahoma, 487 U.S. 815, 838 (1988) (plurality opinion) (juveniles under
16); Ford v. Wainwright, 477 U.S. 399, 410 (1986) (the insane).

In reaching these
categorical determinations, the Court has examined Eighth Amendment challenges
for the central question of whether the imposition of our ultimate sanction
comports with “the evolving standards of decency that mark the progress of a
maturing society.” Trop v. Dulles, 356 U.S. 86, 101 (1958) (plurality
opinion). The analysis begins with a consideration of the “objective indicia of
society’s standards, as expressed in legislative enactments and state
practice.” Roper, 543 U.S. at 563. If the Court finds a national
consensus against the sentencing practice at issue, the Court then exercises
its own independent judgment to determine whether the punishment violates the
Constitution. Id. at 564. This judgment is guided by “standards
elaborated by controlling precedents” and the prevailing principle that the
death penalty must be reserved for only the worst of crimes and the worst of
offenders. Kennedy, 128 S. Ct. at 2650.

Even where capital
punishment is proportionate in the abstract, the Supreme Court has required
additional safeguards in the method of sentencing. Because the death penalty is
“unique in its total irrevocability,” Furman v. Georgia, 408 U.S. 238,
306 (1972) (Stewart, J., concurring), the Court has said that justice requires
individualized consideration of mitigating evidence during sentencing. Woodson
v. North Carolina, 428 U.S. 280, 305 (1976) (plurality opinion). Accordingly,
mandatory death penalty schemes are no longer tolerated; the sentencer must
first determine that capital punishment is appropriate in light “of the
character and record of the individual offender and the circumstances of the
particular offense.” Id. at 304; see also Penry v. Lynaugh, 492
U.S. 302, 319 (1989), abrogated on other grounds by Atkins, 536 U.S.
304; Eddings v. Oklahoma, 455 U.S. 104, 112–15 (1982); Lockett v.
Ohio, 438 U.S. 586, 606–09 (1978) (plurality opinion).

            B.        Noncapital
Cases

Proportionality review
in the noncapital context has followed a different analytical approach.
Recognizing that a term of years is different in kind from the death penalty,
the Supreme Court has largely deferred to the sentencing schemes devised by the
nation’s legislatures. See Rummel v. Estelle, 445 U.S. 263, 283 n.27
(1980). Instead of applying categorical rules, the Court will only consider
whether a prison sentence violates the Eighth Amendment if “comparison of the
crime committed and the sentence imposed leads to an inference of gross
disproportionality.” Harmelin, 501 U.S. at 1005 (Kennedy, J., concurring
in part and concurring in judgment). Upon meeting that threshold inference, the
Court will then compare the challenged sentence against (1) the sentences
of other offenders in the same jurisdiction, and (2) the sentences imposed
for the same crime in other jurisdictions. Id.; see also Solem v.
Helm, 463 U.S. 277, 292 (1983). The sentence is only cruel and unusual if
this comparative analysis “validate[s] an initial judgment that [the] sentence
is grossly disproportionate to [the] crime.” Harmelin, 501 U.S. at 1005
(Kennedy, J., concurring in part and concurring in judgment).

Unlike challenges in the
capital context, the Eighth Amendment does not similarly require individualized
sentencing for a term of years. Id. at 994–95 (majority opinion). The
Supreme Court has drawn the line at death; for all other punishments—even life
without parole—mandatory sentencing schemes that preclude the presentation of
mitigating evidence are entirely permissible. Id. at 996.

II.        The Effect
of Graham

Prior to Graham,
the two tracks of the Court’s proportionality jurisprudence remained strictly
discrete. Indeed, the Court refused to apply its categorical approach in the
noncapital context: “Because a sentence of death differs in kind from any
sentence of imprisonment, no matter how long, our decisions applying the
prohibition of cruel and unusual punishments to capital cases are of limited
assistance in deciding the constitutionality of [a term of years].” Rummel,
455 U.S. at 272. Nevertheless, when faced with the issue of whether juveniles
could be sentenced to life without parole for a nonhomicide offense, the Graham
Court declined to follow the proportionality standard announced in Harmelin,
favoring instead the methodology employed in its capital jurisprudence. Graham,
130 S. Ct. at 2023 (“[T]he appropriate analysis is the one used in cases that
involved the categorical approach, specifically Atkins, Roper,
and Kennedy.”); see also id. at 2046 (Thomas, J., dissenting)
(“For the first time in its history, the Court declares an entire class of
offenders immune from a noncapital sentence using the categorical approach it
previously reserved for death penalty cases alone.”).

Appellant does not
contest the excessiveness or proportionality of his sentence under Graham.
Rather, he argues that Graham redrew the line in regards to
individualized sentencing because the Court applied the categorical
approach—which requires consideration of the offender’s characteristics and the
circumstances of the offense—in a context where, traditionally, the
Constitution has not mandated the factoring of mitigating evidence. In support
of his proposition, appellant directs us to the following passage from Graham:
“In accordance with the constitutional design, the task of interpreting the
Eighth Amendment remains our responsibility. The judicial exercise of
independent judgment requires consideration of the culpability of the offenders
at issue in light of their crimes and characteristics, along with the severity
of the punishment in question.” Id. at 2026 (majority opinion) (citation
and internal quotation omitted).

Appellant argues that
this passage establishes what he deems the “Graham safety net function.”
Under this idea, reviewing courts can only exercise their independent judgment
if they have an adequate record of the individual offender to consider. The
argument follows, therefore, that “it becomes the trial court’s responsibility
to insure [sic] that mitigating factors are adequately identified and developed
for the benefit of the punishment-stage factfinder.” We disagree with
appellant’s construction of Graham.

The quoted passage and
its reference to the offender’s “characteristics” do not, as appellant
suggests, address the need for mitigating evidence to be fully developed during
sentencing. Instead, the passage clearly alludes to the second step in the
Court’s categorical analysis. Before Graham, that step tested the
appropriateness of the death penalty by ensuring either (1) the crime
committed was a homicide offense, or (2) the offender was a member of the
class “most deserving of execution.” Atkins, 536 U.S. at 319. Not
surprisingly, the quoted passage is situated at the beginning of the Court’s
discussion of whether juveniles, as a class, are deserving of the second most
severe punishment under the law. See Graham, 130 S. Ct. at 2026–30
(examining whether legitimate penological goals are served by a sentence of
life without parole for juvenile offenders). Nowhere else does the Court
elaborate on the meaning of “characteristics” or intimate that its analysis is
influenced by any factor other than the offender’s juvenile status. We find no
reason to infer from the Court’s analysis that trial courts must scrutinize the
universe of mitigating factors that might remain undiscovered in the case.

The procedural facts of Graham
support our understanding of its limited implications. Because the offender
in Graham was not punished pursuant to a mandatory sentencing scheme, he
had the opportunity to produce evidence of mitigating circumstances during his
sentencing hearing. See id. at 2018–19. Accordingly, the Court was not
required to revisit the question of whether the Eighth Amendment mandates
individualized consideration for a term of years sentence. Cf. Harmelin,
501 U.S. at 994–95 (rejecting claim that mandatory life sentence required
consideration that offender had no prior felony record). Therefore, discussion
of a constitutional rule regarding mitigating evidence is conspicuously absent
from the decision, and we do not find merit in the argument that Graham implicitly
established appellant’s proposed rule.

III.      Texas
Statutory Duty

Although appellant has
not argued any statutory basis for relief, we note that the Code of Criminal
Procedure contains the following mechanism for ensuring that a defendant’s
mental condition is adequately considered during sentencing:

A presentence investigation conducted on any defendant
convicted of a felony offense who appears to the judge through its own
observation or on suggestion of a party to have a mental impairment shall
include a psychological evaluation which determines, at a minimum, the
defendant’s IQ and adaptive behavior score. The results of the evaluation shall
be included in the report to the judge as required by Subsection (a) of this
section.

Tex.
Code Crim. Proc. Ann. art. 42.12, § 9(i) (West 2010).

            Appellant’s
presentence investigation report does not indicate that a psychological
evaluation was ever conducted, and appellant does not specifically complain on
appeal that the trial court erred in failing to order one. Assuming arguendo
that appellant has raised any claim involving his right to a psychological evaluation,
we would still conclude that appellant is not entitled to relief under the
statute. Under the presumption of regularity, we must presume that the trial
court would have ordered a psychological evaluation had it observed that
appellant was suffering from a mental impairment. Cf. Wright v. State,
873 S.W.2d 77, 80 (Tex. App.—Dallas 1994, pet. ref’d). Though the record may
contain evidence that appellant has a metal plate in his head, the trial court
claimed that it was unable to attribute the cause of the offense to appellant’s
mental health. On these facts, we do not question whether the trial court had a
duty to order an evaluation sua sponte. Likewise, we do not question
whether this duty arose upon the “suggestion of a party.” The right to a psychological
evaluation may be forfeited, just as the right to a presentence investigation
generally. Summers v. State, 942 S.W.2d 695, 696–97 (Tex. App.—Houston
[14th Dist.] 1997, no pet.). To preserve error, a party must specifically
object to the omission of a psychological evaluation from the presentence
investigation report. Nguyen v. State, 222 S.W.3d 537, 542 (Tex.
App.—Houston [14th Dist.] 2007, pet. ref’d). Because appellant only challenged
inaccuracies in the report, rather than objecting to the trial court’s failure
to order a psychological evaluation, any error was waived on appeal. Id.

CONCLUSION

Appellant argues that he
is entitled to a new punishment hearing because the trial court ignored its
duty to ensure that mitigating evidence of his mental health was fully
developed. Because we believe no such duty exists under Graham and
because appellant has waived any relief under Article 42.12, we overrule
appellant’s sole issue and affirm the judgment of the trial court.

 

                                                                                    

                                                                        /s/        Tracy
Christopher

                                                                                    Justice

 

 

 

 

Panel consists of Justices
Seymore, Boyce, and Christopher.

Publish
— Tex. R. App. P. 47.2(b).









[1] Our limited record can
neither confirm nor refute appellant’s assertion that these medical records
were admitted into evidence at a previous hearing on a motion for new trial.