Jennifer Caughey, Justice
After admitting that he strangled his wife, Brian Castello pleaded guilty to murder, *615 a first-degree felony. TEX. PENAL CODE § 19.02(c). The trial court sentenced Castello to 55-years' confinement. Castello appeals, arguing that (1) the trial court erred by sentencing him without (a) a drug and alcohol evaluation, and (b) a psychological evaluation; or, in the alternative; (2) his trial counsel was ineffective for failing to preserve this issue for appellate review; and (3) the fees imposed on him for summoning witnesses and mileage violated his confrontation rights and his right to compulsory process. Because we conclude that Castello forfeited his first claim, his counsel was not ineffective, and he has not shown that any witness fees in this case were unconstitutional as applied to him, we affirm.
I. Background
Castello pleaded guilty to the murder of his wife, Damaris Castello. He had no agreed recommendation as to punishment, and the State prepared a presentence investigation (PSI) report.
Before sentencing Castello, the trial court held a sentencing hearing.
A. Sentencing Testimony
At the sentencing hearing, the State called four witnesses.
First, Detective T.R. Ferguson testified. He stated that he is employed in the homicide division of the Houston Police Department and he was also employed there on November 9, 2014. He remembered receiving a call on that date regarding a homicide at an apartment. Upon arriving at the scene, Detective Ferguson noticed a strong odor that he described as "the odor of death." After receiving consent to enter, Detective Ferguson went inside the apartment, where he found the deceased victim, wrapped in a comforter, in the closet. The State submitted into evidence photographs of the scene and the deceased.
Detective Ferguson testified that he identified Castello as a suspect and interviewed him. Castello told him that the police would "find out what happened sooner or later," and he fell asleep in the interview room. Two days after the incident, Detective Ferguson interviewed Castello again. At that interview, Castello confessed to murdering Damaris. According to Detective Ferguson, Castello said he "always knew he was going to kill someone but that he didn't know when."
The victim's mother, Silvia Espinoza, and her oldest daughter, Maria Escobar, also testified. They emphasized the effect Damaris's death had on them and how much they missed her.
Damaris's brother, Enoc Gonzales, testified as well. He stated that in November 2014, he tried to call Damaris but could not reach her. So, he (along with his brother, cousin, and uncle) went to her apartment, which she shared with Castello. Upon arriving, he asked Castello where Damaris was. Castello responded that he did not know and that he and Damaris had had an argument. Enoc testified that he knew Castello was lying because Damaris would never leave her children behind, but they were there without her.
According to Enoc, he, his brother, his cousin, and his uncle then entered the apartment. They smelled a distinct, foul odor. Enoc's uncle searched for Damaris in the bedroom, then in the closet, where he found Damaris's body wrapped in a comforter and duct tape. Enoc noted that, when they found the body, Damaris's and Castello's infant daughter was in the living room of the apartment in her walker. Enoc also testified regarding the effect Damaris's death had on him and his family.
B. PSI Report
At the sentencing hearing, the State submitted a PSI report, and the trial court *616 took judicial notice of it. Castello did not object to the report or its contents.
The PSI report included a statement detailing information regarding the murder, Castello's prior offenses, and his social history, including but not limited to information regarding his health and drug and alcohol use. It stated that Castello "believes he is in need of alcohol and drug substance abuse treatment." Moreover, it included Castello's Harris County Special Needs Response Form, in which Castello asserted that, on September 30, 2014, he was diagnosed with schizoaffective disorder and prescribed psychotropic medications. The PSI report also contained numerous letters written by Damaris's family and friends, as well as letters from Castello's mother, grandmother, siblings, and his former employer. It included a letter from Castello himself in which he expressed remorse for the murder.
Notably, the PSI report included a Psychological Evaluation Report completed by clinical psychologists Jerome B. Brown and Sheila M. Bailey.[1] The evaluation included Castello's self-reported assertion that he "began to hear voices about a 'day before' his offense" and, on the day of the offense, he heard a voice telling him that he should kill Damaris. The evaluation also reported that Castello said that he consumed about eight or nine beers on the night of the offense. Castello denied receiving professional counseling services or psychoactive medication before his incarceration.
The report found, however, that "[t]he validity scales administered suggested an exaggeration of symptoms" and that there appeared "to be an effort to claim highly unusual attitudes and behaviors and to project severe psychopathology." Thus, the profiles obtained "should be interpreted with caution." Further, the evaluators found that "[e]stimates of intellectual ability place Mr. Castello in the average range." The "[m]ental status examination revealed Mr. Castello to be alert, well-oriented, and able to communicate his ideas without difficulty."
The report concluded that "[a]lthough there is a possibility that mental illness played a part in the homicide, currently there is only his self-report." It stated that Castello "mentioned no symptoms to the investigating police officers, has no psychiatric history, and did not describe the path of development over time usually seen in severe mental disorders." Accordingly, Dr. Brown and Dr. Bailey concluded that there was insufficient evidence to mount an insanity defense at that time.
C. Sentencing and Post-Sentencing Costs
At the close of argument, the trial judge sentenced Castello to 55-years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Four days after the entry of judgment, the trial court entered a Criminal Bill of Costs totaling $359, which included a $120 fee for summoning witnesses and mileage. Castello appealed.
II. Discussion
A. Drug and Alcohol and Psychological Evaluations Requirement
In his first issue, Castello argues that the trial court erred in failing to require the PSI report to include a drug and alcohol evaluation and a psychological evaluation. Castello forfeited this argument.
*617 1. Statutes
Castello premises his argument on Article 42.12 of the Texas Code of Criminal Procedure, which set forth statutory guidance regarding the imposition of community supervision and addressed PSI reports.[2] With regard to evaluations for alcohol or drug abuse, section 9(h) of article 42.12 provided that:
On a determination by the judge that alcohol or drug abuse may have contributed to the commission of the offense ... the judge shall direct a supervision officer ... or a person, program, or other agency approved by the Texas Commission on Alcohol and Drug Abuse, to conduct an evaluation to determine the appropriateness of, and a course of conduct necessary for, alcohol or drug rehabilitation for a defendant and to report that evaluation to the judge.
TEX. CODE CRIM. PROC . art. 42.12, § 9(h).[3]
Likewise, as to mental health evaluations, section 9(i) of article 42.12 provided that:
[a] presentence investigation conducted on any defendant convicted of a felony offense who appears to the judge through its own observation or on suggestion of a party to have a mental impairment shall include a psychological evaluation which determines, at a minimum, the defendant's IQ and adaptive behavior score. The results of the evaluation shall be included in the report to the judge....
TEX. CODE CRIM. PROC . art. 42.12, § 9(i).
2. Analysis
Castello forfeited his first argument by failing to raise it below. It is undisputed that Castello neither objected to the PSI report nor requested the inclusion of a psychological or drug and alcohol abuse evaluation in the report.
On appeal, Castello argues that he could not have forfeited this argument. In so arguing, he urges us to rely on a 1991 San Antonio Court of Appeals case, Garrett v. State , 818 S.W.2d 227 (Tex. App.-San Antonio 1991, no pet.).
Binding precedent squarely rejects his contention. It is well-settled in both our Court and our sister Court that mental health and alcohol and drug evaluations in the PSI report may be forfeited. See, e.g. , Cain v. State , 525 S.W.3d 728, 730-31 (Tex. App.-Houston [14th Dist.] 2017, pet. ref'd) (confirming "that a defendant can waive the right to complain about psychological and substance abuse evaluations being left out of his PSI"); Morris v. State , 496 S.W.3d 833, 837-38 (Tex. App.-Houston [1st Dist.] 2016, pet. ref'd) (disagreeing with Garrett and holding that "complaints concerning the absence of a PSI report or challenges to the adequacy of a psychological evaluation are subject to procedural waiver"); Welch v. State , 335 S.W.3d 376, 382 (Tex. App.-Houston [14th Dist.] 2011, pet. ref'd) (similar); Nguyen v. State , 222 S.W.3d 537, 541 (Tex. App.-Houston [14th Dist.] 2007, pet. ref'd) (concluding defendant waived right to complain about omission of psychological evaluation part of PSI report, noting "[t]he right to a psychological report can be forfeited, just *618 as the right to a presentence investigation generally").
Our Court has made clear that "[t]o preserve error, a party must specifically object to the omission of" the evaluation from the PSI report. Morris , 496 S.W.3d at 837. Because there is no dispute that Castello failed to object here, he forfeited this claim.
We overrule Castello's first issue.
B. Ineffective Assistance of Counsel
Next, Castello asserts that if he forfeited his first issue by failing to preserve error, his counsel was ineffective on this basis, requiring reversal of his sentence and remand to the trial court for a new sentencing hearing. We again disagree.
1. Standard of Review and Applicable Law
We evaluate claims of ineffective assistance of counsel under the two-prong test from Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Hernandez v. State , 988 S.W.2d 770, 770 n.3 (Tex. Crim. App. 1999) ; Goody v. State , 433 S.W.3d 74, 78 (Tex. App.-Houston [1st Dist.] 2014, pet. ref'd). To show ineffective assistance, an appellant must establish that (1) counsel's performance was deficient such that it fell below an objective standard of reasonableness, and (2) the deficiency prejudiced defendant-that but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. See Ex parte Bryant , 448 S.W.3d 29, 39-40 (Tex. Crim. App. 2014) ; Hernandez , 988 S.W.2d at 770 n.3 ; Goody , 433 S.W.3d at 78. A reasonable probability is a probability sufficient to undermine confidence in the outcome; counsel's errors must be so serious as to deprive appellant of a fair trial. Smith v. State , 286 S.W.3d 333, 340 (Tex. Crim. App. 2009).
"[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." Goodspeed v. State , 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting Rylander v. State , 101 S.W.3d 107, 111 (Tex. Crim. App. 2003) ). Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." Id. (quoting Garcia v. State , 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), cert. denied , 537 U.S. 1195, 123 S.Ct. 1351, 154 L.Ed.2d 1030 (2003) ).
Furthermore, we indulge a strong presumption that counsel's conduct fell within the wide range of reasonable assistance. Jackson v. State , 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To defeat this presumption, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." Thompson v. State , 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "When the record is silent on the motivations underlying counsel's tactical decisions, the appellant usually cannot overcome the strong presumption that counsel's conduct was reasonable." Mallett v. State , 65 S.W.3d 59, 63 (Tex. Crim. App. 2001) (citing Thompson , 9 S.W.3d at 813 ). "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." Id. (citing Thompson , 9 S.W.3d at 813-14 ).
2. Analysis
Castello argues that his counsel was ineffective because he failed to request psychological and substance abuse evaluations or to object to the alleged lack of those evaluations. We disagree.
*619 As an initial matter, the record shows that Castello's counsel in fact moved the court to appoint Dr. Brown as a defense mental health expert and included his evaluation in the PSI report. The record also reflects that the PSI report included information regarding Castello's drug and alcohol use.
Beyond what appears in the PSI report, the record is silent as to Castello's trial counsel's actions in this regard. Castello did not file a motion for new trial. Thus, counsel had no opportunity to explain why he did not request additional evaluations. Castello also offered no evidence as to what information could have been gleaned from such evaluations (beyond the material already in the PSI) if they had been requested.
On this record, we cannot conclude that trial counsel's failure to object or request additional evaluations was outside the range of professionally competent assistance. See Cain , 525 S.W.3d at 732 (record was insufficient to establish trial counsel's failure to object to absence of psychological and substance abuse evaluations was outside range of professionally competent assistance, despite statements by appellant and his mother in PSI regarding appellant's drug use and alleged need for mental health treatment). Counsel's actions were not "so outrageous that no competent attorney would have engaged in [them]." Goodspeed , 187 S.W.3d at 392.
Moreover, even if we were to assume that counsel's performance was deficient under Strickland 's first prong, Castello has not shown prejudice as the second prong of Strickland requires. First, the PSI report included a psychological evaluation that detailed Castello's psychological history and his reported medications. Notably, the clinical psychologists concluded that the only evidence of mental impairment was Castello's own self-report. They further cautioned that Castello appeared to be exaggerating his symptoms. Second, the trial court also had evidence before it about Castello's drug and alcohol abuse. Specifically, the PSI included Castello's self-report regarding his history of drug and alcohol use. And importantly, Castello presented no evidence as to what any additional evaluations might have shown.
Because the trial court had before it psychological and drug and alcohol abuse information to use in formulating Castello's sentence, and because Castello fails to show what additional evaluations might have offered, we cannot conclude that but for his counsel's failure to request additional evaluations, there is a reasonable probability that the result would have been different.
We overrule Castello's second issue.
C. Imposition of Summoning Witness and Mileage Costs
Finally, Castello argues that the Code of Criminal Procedure's witness and mileage fees are unconstitutional as applied to him. He argues that they violate his constitutional (1) right to compulsory process and (2) right to confrontation.
The question before us is not whether these statutorily required fees are good policy. Instead, the question is whether, as applied to Castello, they violate constitutional rights. Our Court and our sister Court have held these fees constitutional in the face of almost identical arguments, and Castello offers us no basis to reach a different conclusion in this case. See London v. State , 526 S.W.3d 596, 598-604 (Tex. App.-Houston [1st Dist.] 2017, pet. ref'd) ; see also Merrit v. State , 529 S.W.3d 549, 557-59 (Tex. App.-Houston [14th Dist.] 2017, pet. ref'd).
1. Relevant Law *620 Constitutional Provisions. Both the Texas and United States Constitutions protect the right of an accused, in a criminal prosecution, to have compulsory process for obtaining witnesses in his favor and to be confronted with the witnesses against him. U.S. CONST . Amend. VI ; TEX. CONST . art. I § 10.
The Compulsory Process Clause guarantees the government's assistance in compelling the attendance at trial of witnesses "in [the defendant's] favor." Id. ; see also London , 526 S.W.3d at 599. Importantly, however, the right is limited to compulsory process for obtaining witnesses "whose testimony would be both material and favorable to the defense." London , 526 S.W.3d at 599 (quoting Coleman v. State , 966 S.W.2d 525, 528 (Tex. Crim. App. 1998) ). Thus, the defendant must make a preliminary showing of the "materiality and favorableness" of the witnesses he seeks. Id. at 599-600.
The Confrontation Clause "provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." Id. at 600 (quoting Pennsylvania v. Ritchie , 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987) ).
Texas Code of Criminal Procedure. After a defendant is convicted of a felony or misdemeanor, Article 102.011 of the Texas Code of Criminal Procedure mandates the assessment of a fee for summoning witnesses and for mileage required for an officer to perform and to return from performing this service. TEX. CODE CRIM. PROC . art. 102.011(a)(3), (b). Specifically, article 102.011 provides, in relevant part:
(a) A defendant convicted of a felony or a misdemeanor shall pay the following fees for services performed in the case by a peace officer: ...
(3) $5 for summoning a witness ...
(b) In addition ... a defendant required to pay fees under this article shall also pay 29 cents per mile for mileage required of an officer to perform a service listed in this subsection and to return from performing that service.... This subsection applies to ...
(3) traveling to execute criminal process, to summon or attach a witness, and to execute process not otherwise described by this article.
TEX. CODE CRIM. PROC . art. 102.011(a)(3), (b).
2. Analysis
Our Court has already rejected the precise arguments raised by Castello, and Castello provides us no basis to come to a different conclusion in this case. See London , 526 S.W.3d at 598-604.
Castello asserts that the Code of Criminal Procedure's subpoena fees are unconstitutional as applied to him because he is indigent. In so arguing, he relies on the Sixth Amendment and Gideon v. Wainwright , 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) for the proposition that "a man too poor to hire a lawyer should not be left at the mercy of the power of the State." He asserts generally that "[a] defendant who has to pay for each subpoena on the 'back end' is denied the right to subpoena and [sic] all witnesses he can find." He further argues that "[w]hether or not [he] would have subpoenaed other witnesses, the harm is that an indigent person should not be required to pay to confront his accuser or his right to compulsory process." Finally, he argues that he had constructive notice of the fees because the requirement appears in the statute.
London forecloses these arguments. There, an appellant challenged the postjudgment imposition of fees for summoning witnesses, raising the arguments advanced *621 by Castello here. London , 526 S.W.3d at 599-601. Our Court concluded that London failed to argue or provide evidence that he was deprived of his rights because of the $5 witness fee imposed after the conclusion of trial, and London provided no explanation of how his indigence itself could constitute the relevant harm when he did not argue that the $5 witness fee caused him to become indigent. Id. at 601-02. Thus, he had "not met his burden of showing that his constructive notice of the contingent possibility that in the event of his conviction he would be assessed a fee of $5 per witness had the actual [e]ffect, as applied to him in [that] case, of denying him compulsory process or confrontation of the witnesses against him." Id. at 602.
Similarly, here, Castello has not shown any constitutional violation as applied to him. With regard to his right to compulsory process, Castello has not identified, either at trial or on appeal, a single material and favorable witness he wished to present. See ids="12408250" index="48" url="https://cite.case.law/sw3d/526/596/#p598">id. at 601-02. He did not attempt to issue any subpoenas or compel process for any potential witnesses he did not call. Instead, he asserts on appeal that his "constructive notice" of the $5 witness fee precluded him from presenting an adequate defense. But as we explained in London , this argument disregards precedent that to exercise the right to compulsory process, the defendant bears the burden to "make a plausible showing to the trial court, by sworn evidence or agreed facts, that the witness' testimony would be both material and favorable to the defense." Id. at 600 (quoting Coleman , 966 S.W.2d at 528 ); see also Macias v. State , 539 S.W.3d 410, 421-23 (Tex. App.-Houston [1st Dist.] 2017, pet. ref'd) (following London ). "Without a showing that material, favorable witnesses were available to be called by [Castello], we cannot conclude that, as applied in this case, constructive notice of the $5 witness fee operated to deny his right to 'have compulsory process for obtaining witnesses in his favor.' " London , 526 S.W.3d at 600 (quoting U.S. CONST . Amend. VI ; TEX. CONST . art. I § 10 ).
Castello also fails to show a violation of his Confrontation Clause rights. It bears emphasizing that the fees at issue were assessed (as the statute requires) only after he pleaded guilty. Because these fees are "assessed on conviction," Castello's opportunity to confront or cross-examine the State's witnesses was not contingent on his postjudgment ability to pay the witness fees. Id. In other words, there was no requirement that he pay fees before he could confront witnesses. Instead, only later, after he was convicted, did the statutory fees become due. Therefore, even if he failed to pay the fees, this failure could not have inhibited his prior ability to confront witnesses at trial. Castello makes a general assertion that requiring him to pay the costs for summoning witnesses is unfair and unconstitutional, but he has not established how, as applied in this case, constructive notice of the $5 witness fee operated to prevent him from exercising his rights to "be confronted" with or by "the witnesses against him." See id. at 600-01.
As in London , Castello asserts that the constitutional harm to him is apparent from his indigence. "Yet he provides no argument or evidence that he was deprived of his constitutional rights because of the prospect of being assessed a $5 witness fee after the conclusion of trial, if he were convicted." Id. at 601. He likewise offers no explanation of how his indigence itself could constitute the relevant harm when he does not suggest that the $5 witness fee caused him to become indigent. Id.
Castello has failed to explain why his case is different from London . He has not *622 established that the statute deprived him of his rights to compulsory process and confrontation of adverse witnesses such that it is unconstitutional as it was applied to him. See id.; see, e.g. , Macias, 539 S.W.3d at 421-24 (witness fee did not deny appellant his right to compulsory process where appellant did not show "material and favorable witnesses" not subpoenaed because of cost; case was "indistinguishable" from London ); see also Eugene v. State , 528 S.W.3d 245, 250-51 (Tex. App.-Houston [14th Dist.] 2017, no pet.) (rejecting constitutional challenge to constitutionality of fees for summoning witnesses and mileage); Merrit , 529 S.W.3d at 557-59 (same).
We overrule Castello's third issue.
III. Conclusion
We affirm the judgment of the trial court.

Before Castello pleaded guilty, Castello's counsel moved the court to appoint Dr. Brown as a defense mental health expert.

This article was repealed by the Texas Legislature, effective September 1, 2017, and recodified as its own chapter, chapter 42A, of the Texas Code of Criminal Procedure. The substantive content referenced herein survives. See Tex. Code Crim. Proc . arts. 42A.253(a)(6), 42A.257(a).

Such an evaluation shall be made "after arrest and before conviction, if requested by the defendant" or "after conviction and before sentencing, if the judge assesses punishment in the case." See Tex. Code Crim. Proc . art. 42A.257(a).