# NO. 12-22-00227-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LAKITRICK LARENZO TYLER,* *APPELLANT* | § | *APPEAL FROM THE 145TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *NACOGDOCHES COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Lakitrick Larenzo Tyler appeals his convictions for aggravated robbery, aggravated kidnapping, assault of a pregnant person, and unlawful possession of a firearm by a convicted felon. He raises four issues on appeal. We affirm.

### BACKGROUND

Appellant was indicted for aggravated robbery, aggravated kidnapping, aggravated sexual assault, assault of a pregnant person, and unlawful possession of a firearm by a convicted felon.[1] The indictment also included an enhancement allegation that Appellant had previously been convicted of aggravated assault.

Appellant pleaded "not guilty" to the offenses and the matter proceeded to a jury trial. The victim, who was in a relationship with Appellant, testified that after she and Appellant attended church on the day in question, he became upset and refused to allow her to leave his presence. She testified that Appellant was consuming alcohol and wanted to leave the residence driving her van.

---

[1] *See* TEX. PENAL CODE ANN. §§ 20.04(b) (West 2019) (aggravated kidnapping), 22.01(b)(8) (West Supp. 2022) (assault of a pregnant person), 22.021(a)(1)(A)(i), (a)(2)(A)(iv) (West 2019) (aggravated sexual assault), 29.03(a)(2) (West 2019) (aggravated robbery), 46.04(a)(1) (West Supp. 2022) (unlawful possession of a firearm by a convicted felon).

The victim refused to give him the keys, and in response, Appellant displayed a gun, "like he always used to." Consequently, she surrendered the keys to Appellant, and upon his return, the victim believed that Appellant appeared to be intoxicated.

The victim testified she was scheduled to meet a friend at the hospital to serve as a birth companion for the birth of her friend's child. Appellant initially refused to allow the victim to go to the hospital. Subsequently, the pair went to her ex-mother-in-law's home to drop off her children. Upon the couple's return, Appellant exited the van and grabbed the keys to prevent the victim from leaving, but the victim retrieved another set of keys and went to the hospital. The victim testified that Appellant insisted that she send messages to him to prove she was at the hospital. The victim testified that upon her return home, Appellant was upset and threatened her with a gun, although she was able to retrieve the gun from Appellant and hide it. The victim further testified that Appellant examined the victim's genitals for signs of sexual activity. She testified that Appellant did not believe that she was not "cheating," and he began to hit and choke her.

After finally convincing Appellant to leave the residence for ice cream, the victim testified that she seized an opportunity, fled into a pizzeria, and employees called 911. Testimony from the pizzeria manager, along with video evidence from the store's surveillance system, was admitted depicting the victim frantically attempting to escape Appellant, who entered the store with a gun, and attempted to further abduct the victim. She managed to escape, and store employees hid the victim in the freezer. A store patron similarly testified that the victim entered the store and repeatedly told everyone to call 911. The patron testified that Appellant barged into the pizzeria and continually said, "She's coming with me" while displaying a handgun.

Nacogdoches Police Department Lieutenant Chasen Partin happened to be driving by the restaurant as the incident occurred, and observed numerous females run out the back door of the building, and Appellant fleeing from the front door to a vehicle. Partin drew his service weapon at Appellant, who initially complied with Partin's commands, but subsequently fled. Partin did not see Appellant's gun.

Nacogdoches Police Department Officer Ty Birdwell testified he arrived at the scene and detained Appellant as he began to flee in the vehicle. Birdwell searched the vehicle and discovered

2

a handgun in the floorboard area beside the passenger seat.[2]  The handgun was entered into evidence.

Partin also testified he observed the victim, who was visibly pregnant, at the scene, and noticed marks on her face and throat, as well as bruising on her arms.  Nacogdoches Police Officer Treylyn Smith interviewed the victim and noticed that she appeared "really bruised with a bleeding lip," along with severe bruising around one of her eyes.  Smith testified the victim was in an "excited state" and told him she and Appellant argued and that Appellant struck her, punching her several times in the face.  Smith also stated that the victim told him that after pleading with Appellant, she convinced Appellant to leave the residence to take her for ice cream.  Smith testified that the victim appeared more concerned about Appellant than herself.  Smith acknowledged that Appellant was having mental issues and appeared to be intoxicated.

Nacogdoches Police Officer Robert Price testified that he also assisted with the arrest of Appellant and later interviewed Appellant, who told the officer he had recently been released from prison.  Appellant told Price that the victim struck him with a hammer causing his visible tooth and lip injuries.

The victim testified that following Appellant's arrest, she bonded him out of the Nacogdoches County Jail and that Appellant stabbed her following his release from jail.

The jury found Appellant "guilty" of aggravated robbery, aggravated kidnapping, aggravated assault of a pregnant person, and unlawful possession of a firearm by a convicted felon.  The jury acquitted Appellant of the aggravated sexual assault charge.

Appellant elected that the trial court assess his punishment.  After a punishment hearing, the trial court sentenced Appellant to life imprisonment on the aggravated robbery and aggravated kidnapping charges, and ten years of imprisonment on the assault of a pregnant person and unlawful possession of a firearm by a convicted felon charges, all of which the trial court ordered to be concurrently served.  This appeal followed.

## DOUBLE JEOPARDY

In his first issue, Appellant contends that the convictions for all these offenses constitute a single offense for purposes of double jeopardy.

---

[2] As relevant to the unlawful possession of a firearm by a convicted felon charge, the State and Appellant stipulated that the Appellant was convicted of aggravated assault and released from custody on May 10, 2019.

**Standard of Review and Applicable Law**

The Fifth Amendment's Double Jeopardy Clause offers protection against multiple prosecutions and multiple punishments for the same offense. U.S. CONST. amend. V; *see Illinois v. Vitale*, 447 U.S. 410, 415, 100 S. Ct. 2260, 2264, 65 L. Ed. 2d 228 (1980); *Cervantes v. State*, 815 S.W.2d 569, 572 (Tex. Crim. App. 1991). To determine whether two offenses are the "same offense" for purposes of double jeopardy, we apply the "same-elements" test as set forth in *Blockburger v. United States*. *See Bien v. State*, 550 S.W.3d 180, 184 (Tex. Crim. App. 2018) (citing *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932)). Under the "same-elements" test, "two offenses are not the same if 'each provision requires proof of a fact which the other does not.'" *Id.* (quoting *Blockburger*, 284 U.S. at 304, 52 S. Ct. at 182).

Additionally, the Supreme Court has long held that simply because an individual engaged in only one "culpable act," he is not precluded from conviction and punishment for more than one offense. *United States v. Dixon*, 509 U.S. 688, 704, 113 S. Ct. 2849, 2860, 125 L. Ed. 2d 556 (1993) (rejecting "same conduct" test of *Grady v. Corbin*, 495 U.S. 508, 110 S. Ct. 2084, 109 L. Ed. 2d 548 (1990)). If both offenses, as pleaded, have different elements under the *Blockburger* test, a judicial presumption arises that the offenses are different for double jeopardy purposes, and the defendant may be convicted and punished separately for each offense. *Bien*, 550 S.W.3d at 184–85. That presumption, however, can be rebutted if it can be shown that the legislature clearly intended only one punishment for both offenses. *Id.* at 185; *Ex parte Benson*, 459 S.W.3d 67, 72 (Tex. Crim. App. 2015).

In Texas, the Blockburger "same-elements" test is informed only by the pleadings, and a reviewing "court may not consider the evidence presented at trial" to make the determination. *Bien*, 550 S.W.3d at 184; *Benson*, 459 S.W.3d at 73. Moreover, even where there is a substantial overlap in the proof required for each offense, the offenses are not the "same offense" for double jeopardy purposes if each offense, as pleaded, requires at least one element not required by the other offense. *Ex parte McWilliams*, 634 S.W.2d 815, 824 (Tex. Crim. App. 1982). Once the offenses are determined to be different offenses under the *Blockburger* "same-elements" test, we consider a non-exclusive set of factors set forth in *Ex parte Ervin* to determine whether the legislature clearly intended only one punishment for these separate offenses:

> whether the offenses provisions are contained within the same statutory section, whether the offenses are phrased in the alternative, whether the offenses are named similarly, whether the

4

offenses have common punishment ranges, whether the offenses have a common focus (i.e. whether the "gravamen" of the offense is the same) and whether that common focus tends to indicate a single instance of conduct, whether the elements that differ between the offenses can be considered the "same" under an imputed theory of liability which would result in the offenses being considered the same under *Blockburger* (i.e. a liberalized *Blockburger* standard utilizing imputed elements), and whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double jeopardy purposes.

*Ex parte Ervin*, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999). If, as pleaded, the offenses each have at least one element the other does not, and if, according to the relevant statutory provisions, it is not clear that the legislature intended both offenses to be punished as one, then separate convictions and punishments for each offense does not violate one's right against double jeopardy. *Philmon v. State*, 609 S.W.3d 532, 535–36 (Tex. Crim. App. 2020).

**Discussion**

Appellant contends that he was convicted for multiple offenses all stemming from one continuing course of conduct, and received multiple punishments for what was in essence a single offense in violation of the Fifth Amendment's Double Jeopardy Clause. Specifically, he contends his conduct constitutes a single continuous act, based on a single impulse to control and restrict the victim's every action on the date in question. We disagree that the offenses violate the Double Jeopardy Clause.

Turning first to the *Blockburger* test, the first-degree felony offense of aggravated kidnapping requires the abduction of another person, which is not an element of any of the other charged offenses. *See* TEX. PENAL CODE ANN. §§ 20.01(1), (2) (West Supp. 2022) (defining "restrain" and "abduct"), 20.04(b) (West 2019) (identifying elements of aggravated kidnapping as charged in this case).

The first-degree felony offense of aggravated robbery includes a threat of imminent bodily injury or death during the course of committing a theft, an element unique to it as distinguished from the other alleged offenses. *See Id.* §§ 29.02 (West 2019) (robbery statute as charged here requires theft with intent to obtain or maintain control of property plus intentional or knowing threat to place another in fear of imminent bodily injury or death), 29.03(a)(2) (West 2019) (aggravated robbery is robbery under Section 29.02 plus aggravating element of use or exhibition of deadly weapon during robbery).

5

Unlike the other offenses, the third-degree felony offense of assault of a pregnant person requires the unique element that the actor knows the victim is pregnant at the time of the offense. *See id.* § 22.01(b)(8) (West Supp. 2022).

The third-degree felony offense of unlawful possession of a firearm by a convicted felon requires the State to prove, distinct from the other alleged offenses, that Appellant have a felony conviction along with possession of a firearm before the fifth anniversary of the person's release from confinement or release from supervision under parole or mandatory supervision. *See id.* § 46.04(a)(1) (West Supp. 2022).

Accordingly, a single prosecution for all these separate offenses does not violate the double jeopardy clause under the ***Blockburger*** "same-elements" test. *See **Blockburger***, 284 U.S. at 304, 52 S. Ct. at 182 ("[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.").

However, this does not end our inquiry. Proceeding to the ***Ervin*** factors, aggravated robbery is found in Title 7: Offenses Against Property of the Texas Penal Code. Aggravated kidnapping and assault of a pregnant person are found in Title 5: Offenses Against the Person. Unlawful possession of a firearm by a convicted felon is found in Title 10: Offenses Against Public Health, Safety, and Morals. The offenses are not phrased in the alternative, nor do they have similar names.

Each offense has a different gravamen or focus. Aggravated kidnapping's gravamen is abduction. *See **Schweinle v. State***, 915 S.W.2d 17, 19 n. 2 (Tex. Crim. App. 1996) (per curiam). Kidnapping is a result-oriented offense because the ultimate focus is the abduction of the victim, not how the defendant restrains or interferes with the victim's liberty. ***Gonzales v. State***, 270 S.W.3d 282, 288 (Tex. App.—Amarillo 2008, pet. ref'd) (op. on reh'g). The offense is legally completed when at any time during the restraint, the defendant forms the intent to prevent the victim's liberation by secreting or holding the victim in a place he is unlikely to be found. ***Laster v. State***, 275 S.W.3d 512, 521 (Tex. Crim. App. 2009). The gravamen of robbery is its assaultive nature in the course of committing a theft. *See **Purser v. State***, 902 S.W.2d 641, 647 (Tex. App.—El Paso 1995, pet. ref'd.).

Assault of a pregnant person and unlawful possession of a firearm by a convicted felon are both third degree felonies as charged. The gravamen or focus of these offenses is likewise distinct

6

from the other offenses. The gravamen of assault of a pregnant person, a result-oriented offense, is causing bodily injury, with the added focus that it be committed against a particular class of victim: a pregnant person. *See* TEX. PENAL CODE ANN. § 22.01(b)(8); *see also* **Landrian v. State**, 268 S.W.3d 532, 537 (Tex. Crim. App. 2008) (discussing gravamen of assault generally). The gravamen or focus of unlawful possession of a firearm is apparently that the Legislature deemed the possession of firearms by a particular class of people—convicted felons meeting the statutory criteria—is against the public health, safety, and morals of our society. *See* TEX. PENAL CODE ANN. § 46.04(a)(1). This is presumably due to their demonstrated dangerousness to society for past commission of sufficiently serious criminal offenses, such that criminalizing their possession of firearms for a specified time period after their release is justified. *See id.* In summary, all of these offenses are separate and distinct, and the legislature treats them as such, even if committed during a single criminal episode. Finally, there appears to be no legislative history regarding concurrent charges of the offenses, and Appellant has not cited any such relevant history.

Therefore, we hold that as pleaded, the offenses each have at least one element the other does not, and according to the relevant statutory provisions, it is not clear that the legislature intended the offenses to be punished as one; accordingly, separate convictions and punishments for each offense did not violate Appellant's right against double jeopardy. *See* **Philmon**, 609 S.W.3d at 535–36; *see also* **Ex parte Herron**, 790 S.W.2d 623, 625 (Tex. Crim. App. 1990) (holding convictions for aggravated kidnapping and aggravated robbery in single trial did not violate double jeopardy provisions even though same evidentiary facts were used to support both convictions, because legislature intended to impose multiple punishments for conduct that occurred in the same transaction); **Riley v. State**, No. 05-04-00749-CR, 2005 WL 2764586, at *3 (Tex. App.—Dallas Oct. 26, 2005, no pet.) (op., not designated for publication) (holding that although kidnapping and robbery occurred as part of single criminal episode, against same victim, and shared same aggravating factor—use or exhibition of a deadly weapon—they were distinct acts—restraint of victim and theft of property—and constituted different offenses with unique elements of proof).

Appellant's first issue is overruled.

In his second issue, Appellant contends that the trial court abused its discretion in allowing the State to introduce numerous instances of extraneous conduct during the guilt/innocence phase of trial under Texas Code of Criminal Procedure Article 38.371.

In a case in which a family member of the defendant is the victim, each party may offer "testimony or other evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense," including "testimony or evidence regarding the nature of the relationship between the actor and the alleged victim." TEX. CODE CRIM. PROC. ANN. art. 38.371(b) (West Supp. 2022). The evidence must still be admissible under the Texas Rules of Evidence. *See id.* art. 38.371(c).

At trial, pursuant to Article 38.371, the State offered testimony from the victim regarding past extraneous incidents of domestic violence perpetrated against her by Appellant. Appellant argues on appeal that the trial court abused its discretion in admitting this evidence, because the evidence was unnecessary and served no other purpose than as bad character conformity evidence. As part of this issue, Appellant also contends that the evidence was inadmissible under Texas Rule of Evidence 403.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. TEX. R. APP. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). Further, the party must obtain an express or implicit adverse trial court ruling or object to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2); *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020).

Outside of the presence of the jury, the State indicated to the trial court that it intended to ask the victim questions concerning prior incidents with Appellant. The following discussion took place:

> [PROSECUTOR]: Your Honor, before we get started, the next witness will be . . . the victim in this case. The State intends on questioning [the victim] about some extraneous offenses that will fall under 38.371 of the Code of Criminal Procedure that relate directly to the relationship between the victim and the Defendant.
>
> THE COURT: [Defense Counsel]?

[DEFENSE COUNSEL]: Your Honor, looking at the statute -- I knew this was going to come up -- and so looking at the statute, I'm not going to make an objection at this time, Your Honor.

THE COURT: All right. Very well.

[DEFENSE COUNSEL]: I understand it's one of those things that they've corrected in the statutes.

THE COURT: All right. Very well. Then that testimony will be allowed under Article 38.371.

Not only did trial counsel affirmatively state that he would not object at that time, our review of the record shows that counsel never made an objection to the individual instances of extraneous conduct when offered by the State. Accordingly, Appellant has not preserved this issue. Under these circumstances, counsel's equivalent of an affirmative "no objection" statements served per se as "an unequivocal indication that a waiver was both intended and understood." *See* ***Thomas v. State***, 408 S.W.3d 877, 885-86 (Tex. Crim. App. 2013); ***Upchurch v. State***, 656 S.W.3d 170, 177–78 (Tex. App.—Fort Worth 2022, no pet.) (applying rule to extraneous offense evidence from prior incident in which defendant set victim on fire and holding "no objection" statements waived issue on appeal).

Similarly, when the trial court admits extraneous offenses pursuant to Article 38.371, the defendant must object at trial that the probative value of the extraneous offense is substantially outweighed by the risk of undue prejudice to preserve a Rule 403 complaint on appeal. ***Keller v. State***, 604 S.W.3d 214, 228 (Tex. App.—Dallas 2020, pet. ref'd). Therefore, without any objection on Rule 403 grounds, Appellant has likewise waived this portion of his second issue. *See* ***id.***

Appellant's second issue is overruled.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his third issue, Appellant argues that trial counsel provided ineffective assistance of counsel.

## Standard of Review and Applicable Law

In reviewing an ineffective assistance of counsel claim, we follow the United States Supreme Court's two-pronged test in ***Strickland v. Washington***, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). ***Hernandez v. State***, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986).

Under the first prong of the ***Strickland*** test, an appellant must show that counsel's performance was "deficient." ***Strickland***, 466 U.S. at 687, 104 S. Ct. at 2064; ***Tong v. State***, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." ***Strickland***, 466 U.S. at 687, 104 S. Ct. at 2064. To be successful, an appellant must "show that counsel's representation fell below an objective standard of reasonableness." ***Id.***, 466 U.S. at 688, 104 S. Ct. at 2064; ***Tong***, 25 S.W.3d at 712.

Under the second prong, an appellant must show that the "deficient performance prejudiced the defense." ***Strickland***, 466 U.S. at 687, 104 S. Ct. at 2064; ***Tong***, 25 S.W.3d at 712. The appropriate standard for judging prejudice requires an appellant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Strickland***, 466 U.S. at 694, 104 S. Ct. at 2068; ***Tong***, 25 S.W.3d at 712. The appellant must prove that his attorney's errors, judged by the totality of the representation and not by isolated instances of error, denied him a fair trial. ***Burruss v. State***, 20 S.W.3d 179, 186 (Tex. App.—Texarkana 2000, pet. ref'd).

It is not enough for the appellant to show that the errors had some conceivable effect on the outcome of the proceedings. ***Id.*** He must show that there is a reasonable probability that, but for his attorney's errors, the jury would have had a reasonable doubt about his guilt or that the extent of his punishment would have been less. *See id.*; *see also* ***Bone v. State***, 77 S.W.3d 828, 837 (Tex. Crim. App. 2002). A reasonable probability is a probability sufficient to undermine confidence in the outcome. ***Strickland***, 466 U.S. at 694, 104 S. Ct. at 2068; ***Tong***, 25 S.W.3d at 712. An appellant claiming ineffective assistance of counsel must affirmatively prove prejudice from counsel's deficient performance. ***Mitchell v. State***, 989 S.W.2d 747, 748 (Tex. Crim. App. 1999). Review of trial counsel's representation is highly deferential. ***Tong***, 25 S.W.3d at 712. We indulge in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ***Strickland***, 466 U.S. at 689, 104 S. Ct. at 2065.

It is Appellant's burden to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. ***Id.***; ***Tong***, 25 S.W.3d at 712. Moreover, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. ***Thompson v. State***, 9 S.W.3d 808,

813 (Tex. Crim. App. 1999). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Id.*

**Discussion**

Appellant contends that trial counsel provided ineffective assistance because he allegedly did not conduct an adequate investigation into Appellant's drug use and mental health status, failed to object to the PSI's lack of the required substance abuse and mental health evaluations,[3] and failed to call rebuttal witnesses or proffer any testimony from Appellant at the sentencing hearing.

The record is undeveloped in this direct appeal to overcome the presumption of competence in the exercise of reasonable professional judgment. *See Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007) (noting that a reviewing court on direct appeal will rarely be able to fairly evaluate the merits of an ineffective assistance claim, because the record on direct appeal is usually undeveloped and inadequately reflective of the reasons for defense counsel's actions at trial).

The record does not support Appellant's claim that trial counsel failed to conduct some investigation into Appellant's mental health and substance abuse issues. *See Richardson v. State*, 606 S.W.3d 375, 382–83 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (observing that, while "no reasonable trial attorney would wholly fail to investigate the facts of a case," record did not show that counsel was unaware of evidence against appellant, and thus, appellant could not prove ineffective assistance claim). Furthermore, Appellant has not identified any particular information that further investigation would have revealed. Thus, Appellant's allegations that further investigation could have uncovered more relevant information concerning his mental health and substance abuse are purely speculative and do not support a conclusion that trial counsel's investigation was unreasonable under the circumstances. *See Andrus v. Tex.*, 140 S. Ct. 1875, 1881, 207 L. Ed. 2d 335 (2020) ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."); *Cain v. State*, 525 S.W.3d 728, 732 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (holding counsel's alleged failure to object to required PSI evaluations for mental health and substance abuse issues did not support ineffective assistance claim on direct appeal given silent record as to reasons for failure to object, also rejected argument

---

[3] *See* TEX. CODE CRIM. PRO. ANN. arts. 42A.253(a)(3), (6) (West 2018) (criminal history, social history, and psychological evaluation requirement); 42A.257 (West 2018) (alcohol and substance abuse evaluation requirement).

that no strategy could support failure to object, and finally concluded that defendant failed to meet prejudice prong); *Castello v. State*, 555 S.W.3d 612, 618-19 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (same).

In contrast to Appellant's assertion, the record in this direct appeal fails to support that counsel had no potential viable trial strategy sufficient to overcome the presumption of competent and adequate assistance in the exercise of reasonable professional judgment. *See Lopez v. State*, 343 S.W.3d 137, 142-43 (Tex. Crim. App. 2011) (stating that "court must not engage in retrospective speculation" and that "[i]t is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence"). Appellant has failed to demonstrate that trial counsel's representation in this regard fell outside the range of competence demanded of attorneys in criminal cases. *See Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010).

Finally, with respect to counsel's alleged failure to call witnesses, any failing in this regard is irrelevant absent a showing that such witnesses were available, and Appellant would benefit from their testimony. *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983). Appellant makes no argument identifying those witnesses, that they were available to testify, or that their testimony would have been beneficial to him. Thus, Appellant has not shown that defense counsel's failure to call any witnesses amounted to ineffective assistance. *See id.*

In summary, we hold that the record contains no evidence to rebut the presumption that, based on the totality of the representation, trial counsel performed competently. *See Lopez*, 343 S.W.3d at 142-43; *Mata*, 226 S.W.3d at 430; *Thompson*, 9 S.W.3d at 81. Furthermore, we hold that, from the record before us, even if counsel's performance was deemed deficient, the evidence reflects no reasonable probability that the result would have been different but for the deficiency. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Tong*, 25 S.W.3d at 712.

Appellant's third issue is overruled.

## CRUEL AND UNUSUAL PUNISHMENT

In his fourth issue, Appellant argues that the sentence of life imprisonment is grossly disproportionate to the crimes committed and amounts to cruel and unusual punishment under the United States Constitution and the Texas Constitution. Appellant contends that his sentence is

grossly disproportionate to his conduct in committing the offenses, and that the trial court should have imposed a shorter sentence.

Before a complaint may be presented for appellate review, the record must show that Appellant raised the complaint to the trial court by a timely request, objection, or motion. TEX. R. APP. P. 33.1(a)(1); *see Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd). A complaint that a sentence is grossly disproportionate and constitutes cruel and unusual punishment may be preserved by objecting at the punishment hearing, or when the sentence is pronounced. *Burt v. State*, 396 S.W.3d 574, 577 (Tex. Crim. App. 2013); *Kim*, 283 S.W.3d at 475. An appellant may raise a sentencing issue for the first time in a motion for new trial only if he did not have an opportunity to object when the sentence was imposed. *Burt*, 396 S.W.3d at 577 n.4. In this case, Appellant did not object at the punishment hearing when his sentence was pronounced. Because Appellant had the opportunity to object to his sentence at the punishment hearing and failed to do so, we conclude that he failed to preserve this issue for our review. *See* TEX. R. APP. P. 33.1(a)(1); *Burt*, 396 S.W.3d at 577-78.

Even had Appellant preserved the issue for appeal, the result would not change. The United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. This provision was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Meadoux v. State*, 325 S.W.3d 189, 193 (Tex. Crim. App. 2010). Similarly, the Texas Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." TEX. CONST. art. 1, § 13. The difference between the Eighth Amendment's "cruel and unusual" phrasing and the Texas Constitution's "cruel or unusual" phrasing is insignificant. *Cantu v. State*, 939 S.W.2d 627, 645 (Tex. Crim. App. 1997).

The legislature is vested with the power to define crimes and prescribe penalties. *See Davis v. State*, 905 S.W.2d 655, 664 (Tex. App.—Texarkana 1995, pet. ref'd); *see also Simmons v. State*, 944 S.W.2d 11, 15 (Tex. App.—Tyler 1996, pet. ref'd). Courts have repeatedly held that punishment which falls within the limits prescribed by a valid statute is not excessive, cruel, or unusual. *See Harris v. State*, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983); *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); *Davis*, 905 S.W.2d at 664. In this case, Appellant was convicted of the first-degree felonies of aggravated kidnapping and aggravated robbery with an enhancement for a prior felony, which both have a punishment range from fifteen to ninety-nine

years of imprisonment, or life imprisonment. *See* TEX. PENAL CODE ANN. §§ 12.32(a) (West 2019) (first-degree felony punishment ranges), 12.42(c)(1) (West 2019) (enhancement minimum sentence range), 20.04(b) (aggravated kidnapping), 29.03(a)(2) (West 2019) (aggravated robbery). The trial court assessed life imprisonment for both offenses.

Appellant was also convicted of the third-degree felony offenses of assault of a pregnant person and unlawful possession of a firearm by a convicted felon, which both have a punishment range from two to ten years of imprisonment. *See id.* §§ 12.34(a) (West 2019) (third degree felony punishment range), 22.01(b)(8) (assault of a pregnant person), 46.04(a)(1) (unlawful possession of a firearm by a convicted felon). The trial court sentenced Appellant to ten years of imprisonment for both offenses. Thus, the sentences imposed by the trial court fall within the range set forth by the legislature. Therefore, the punishment is not prohibited as cruel, unusual, or excessive per se. *See Harris*, 656 S.W.2d at 486; *Jordan*, 495 S.W.2d at 952; *Davis*, 905 S.W.2d at 664.

Nevertheless, Appellant urges this Court to consider the factors originally set forth in *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). Under this test, the proportionality of a sentence is evaluated by considering (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions. *Id.*, 463 U.S. at 292, 103 S. Ct. at 3011. The application of the *Solem* test has been modified by Texas courts and the Fifth Circuit Court of Appeals in light of the Supreme Court's decision in *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) to require a threshold determination that the sentence is grossly disproportionate to the crime before addressing the remaining elements. *See, e.g.*, *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992), cert. denied, 506 U.S. 849, 113 S. Ct. 146, 121 L. Ed. 2d 98 (1992); *see also Jackson v. State*, 989 S.W.2d 842, 845–46 (Tex. App.—Texarkana 1999, no pet.).

We are guided by the holding in *Rummel v. Estelle* in making the threshold determination of whether Appellant's sentence is grossly disproportionate to his crime. 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980). In *Rummel*, the Supreme Court considered the proportionality claim of an appellant who had received a mandatory life sentence under a prior version of the Texas habitual offender statute for a conviction of obtaining $120.75 by false pretenses. *See id.*, 445 U.S. at 266, 100 S. Ct. at 1135. In that case, the appellant received a life sentence because he had two prior felony convictions—one for fraudulent use of a credit card to obtain $80.00 worth

14

of goods or services and the other for passing a forged check in the amount of $28.36. ***Id.***, 445 U.S. at 265–66, 100 S. Ct. at 1134–35. After recognizing the legislative prerogative to classify offenses as felonies and, further, considering the purpose of the habitual offender statute, the court determined that the appellant's mandatory life sentence did not constitute cruel and unusual punishment. ***Id.***, 445 U.S. at 284–85, 100 S. Ct. at 1144–45.

In this case, the offenses Appellant committed—aggravated kidnapping, aggravated robbery, assault of a pregnant person, and unlawful possession of a firearm by a convicted felon—are far more serious than the combination of offenses committed by the appellant in ***Rummel***, while Appellant's sentences for aggravated kidnapping and aggravated robbery are the same as the life sentence upheld by the Supreme Court in ***Rummel***, and his sentences for assault of a pregnant person and unlawful possession of a firearm by a convicted felon are significantly less severe than the sentence in ***Rummel***.

The evidence at trial showed that Appellant committed aggravated robbery by taking the victim's van at gunpoint. He then held her captive and assaulted her by punching her, biting her face, and jumping on her pregnant stomach. When the victim escaped, Appellant ran into a store filled with customers and employees and attempted to drag the pregnant victim out of the store at gunpoint. While released on bond for these offenses, Appellant broke into the victim's house and stabbed her with a knife while her young children ran for help. Thus, it is reasonable to conclude that if the sentence in ***Rummel*** is not unconstitutionally disproportionate, neither is Appellant's sentence in this case. Because we do not find that the threshold test is satisfied, we need not apply the remaining elements of the ***Solem*** test.

Accordingly, we overrule Appellant's fourth issue.

## DISPOSITION

Having overruled Appellant's four issues, the trial court's judgment is ***affirmed***.

**BRIAN HOYLE**
Justice

Opinion delivered August 31, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

15



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 31, 2023**

**NO. 12-22-00227-CR**

**LAKITRICK LARENZO TYLER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 145th District Court

of Nacogdoches County, Texas (Tr.Ct.No. F2226101)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*