# NO. 12-22-00225-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *SHAWN LANE POPE,*<br>*APPELLANT* | § | *APPEAL FROM THE 349TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Shawn Lane Pope appeals his conviction for assault/family violence by impeding breath or circulation. Appellant presents four issues on appeal. We affirm.

## BACKGROUND

Appellant was charged by indictment with assault/family violence by impeding breath or circulation. Appellant pleaded "not guilty," and the matter proceeded to a jury trial. The jury found Appellant "guilty" and sentenced him to three years confinement. Appellant filed a motion for new trial, which was overruled by operation of law. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his fourth issue, Appellant urges the evidence is insufficient to support his conviction. Specifically, he argues the evidence fails to support that he impeded the victim's breath.

### Standard of Review

The ***Jackson v. Virginia*** legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. ***Brooks v. State***, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *see **Jackson v. Virginia***, 443 U.S. 307, 315-16, 99

S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979).  The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

We examine the evidence in the light most favorable to the verdict.  *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186.  The jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony.  *Brooks*, 323 S.W.3d at 899; *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981).  We give full deference to the factfinder's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  If the record contains conflicting inferences, we must presume that the factfinder resolved such facts in favor of the verdict and defer to that resolution.  *Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Circumstantial evidence is as probative as direct evidence in establishing the accused's guilt. *Hooper*, 214 S.W.3d at 13.  Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.  *See id*. Juries are permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial.  *Id*. at 15.  Juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions.  *Id*.  An inference is a conclusion reached by considering other facts and deducing a logical consequence from them, while speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented.  *Id*. at 16.

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge.  *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id*.

**Applicable Law**

To prove Appellant guilty of assault involving family violence by impeding breath or circulation as charged in this case, the State was required to prove that Appellant (1) was or had been in a dating relationship with the victim, and (2) intentionally, knowingly, or recklessly impeded the victim's normal breathing or blood circulation by applying pressure to her throat or neck. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2)(B) (West Supp. 2022).

A person acts intentionally "when it is his conscious objective or desire to engage in the conduct or cause the result[;]" a person acts knowingly "when he is aware of the nature of his conduct or that the circumstances exist[;]" and a person acts recklessly "when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03(a), (b), (c) (West 2021). Bodily injury is defined as "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8) (West 2021). The jury may infer intent from circumstantial evidence, such as the defendant's acts, words, and conduct. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

A victim's testimony alone can provide sufficient evidence to support a conviction of felony assault of a family member by strangulation, and the evidence need not show that the victim lost consciousness or was completely unable to breathe. *See Marshall v. State*, 479 S.W.3d 840, 845 (Tex. Crim. App. 2016). Thus, "any hindrance, obstruction, or impediment for any amount of time to one's breathing or blood flow is per se a bodily injury and therefore sufficient to satisfy family-violence assault." *Philmon v. State*, 609 S.W.3d 532, 537 (Tex. Crim. App. 2020) (discussing the holding in *Marshall* and noting that "[t]his is an exceptionally low bar").

**Analysis**

On appeal, Appellant urges the evidence is insufficient to support the jury's finding that he choked the victim, Heather Pope. He maintains that his arm was around her chest, not her neck or throat, and that the victim's ability to scream negates a finding that her breath was impeded.

Officer John Dougharty of the Palestine Police Department[1] testified that he responded to a call of a potential assault on March 3, 2019. When he arrived, Appellant had his arms around

---

[1] Officer Dougharty was employed by Humble Police Department at the time of trial; however, he was with the Palestine Police Department at the time of the incident.

Heather's throat. According to Dougharty, Heather's eyes appeared "glazed over, and she wasn't really focusing, where she may have been blacked out or may not have been aware of what was going on." Officers were able to remove Appellant's arm from Heather's neck, and she then began screaming. The interaction was recorded on Dougharty's body camera, and the recording was admitted into evidence and published to the jury. Dougharty further testified that Heather's neck showed markings consistent with choking. Photographs of Heather's injuries, which included bruising on her neck, were also admitted into evidence. Dougharty opined that based on his experience with assault cases, Heather's injuries appeared consistent with being choked. When interviewed, Appellant claimed he was not choking Heather but was "holding her."

Officer Aston Rodriguez also responded to the call with Dougharty. He testified that when he arrived, Appellant had his arm around Heather's throat. As soon as the officers removed Appellant's arm, Heather started to scream and "kind of freak out a little bit. Which it appeared she wasn't able to do that when he had his arm around her throat." He testified that it was as if "she couldn't breathe or couldn't get a sound out with her – with his arm around her neck." He estimated the amount of time that he observed Heather to be nonresponsive as twenty to thirty seconds. Rodriguez further stated that because Heather did not scream until they were able to pry away Appellant's arm lead him to believe that "she had some kind of restricted airway or something like that, or she might have been screaming from, you know, from the time that he had his arm around her."

Magan Melson, who has known Appellant and Heather for years, lived at the house where the incident occurred. Magan testified that she called the police because she was "trying to get [Appellant] off of Heather." When she called 911, she told the dispatcher that the police needed to arrive quickly or she was going to shoot Appellant. When asked about the specifics of the incident, Magan testified that Appellant came to the house and spoke with Heather. Later, the two went outside. Magan eventually went outside and saw Appellant with his arm around Heather's neck. However, she opined at trial that Appellant was not actually choking Heather. Magan testified that Heather's son thought Appellant was choking her and started hitting Appellant in the face.

Heather testified that she was married to Appellant for twelve years and that while the two are divorced, they remain "best friends." They divorced in July 2019, approximately four

4

months after the incident in question. In March 2019, Heather was staying with Magan and her mother at their residence. On the evening in question, Appellant came over to help Heather pay her portion of an electric bill that she owed the Melsons. While there, Appellant accused her of using methamphetamine, which she admitted to using at the time. He also accused her of having affairs. The two began arguing, and eventually went outside because Heather told Appellant it was time for him to leave. She was "coming down" off methamphetamine and wanted to sleep. According to Heather, Appellant hugged her and would not let go. When she attempted to scoot down and turn around to extract herself, his arm ended up around her chest.

Dolan Robertson, Heather's son, heard her asking Appellant to let her go and came outside. Robertson asked Appellant to release Heather. After Appellant repeatedly refused, Robertson "took a flying leap off the stairs onto the sidewalk and landed to his face with a flying punch and commenced to beat him until the police got there." Appellant continued to hold onto Heather even during the beating.

At trial, Heather testified that she did not recall telling the police that Appellant's "hug" was "holding onto [her] really tight." She claimed to not remember telling the officers that Appellant told her, "You are going to have to stop lying to me you stupid fucking bitch." Heather did not seem to remember anything she told officers about the events of the evening or being examined by medical personnel. Heather admitted that when she was trying to get away from Appellant, "it felt like he was choking [her]." However, she claimed that after she "sobered up" and had time to reflect, she concluded he was not actually choking her. Heather testified she screamed while Appellant held her, as she "was scared because he would not listen to [her]." She claimed that she was able to breathe throughout the entire ordeal. She further testified that the neck bruising in the photographs was not from the evening in question or Appellant's actions.

The EMS records of Heather's injuries were also admitted into evidence. According to those records, Heather told EMS personnel that "she was choked." She also had pain and tenderness to her neck, head, and face.

Robertson testified that Appellant is his stepfather, and he has known him for more than ten years. Robertson did not remember what happened on the night of the incident because he was so aggravated that he "may have blacked out" and only remembered "flashes of the scene." Robertson testified that prior to his testimony, he received a text message from Appellant's sister stating, "If you fuck [Appellant] over in court, then don't ever speak to me again, ever." He

responded, "Actually, I beat his bitch ass up with my hands for touching my mother." He also told her, "This is an inappropriate conversation, because we're not supposed to be talking anymore." He admitted that on the night in question, he felt it was necessary to punch Appellant and to point a gun at him to keep his mother safe.

Keithan Melson, Magan's son, testified that Appellant and Heather hugged inside the house, but subsequently began arguing and went outside. While outside, Keithan observed Appellant switch from a forward hug to a "backwards hug," in which Appellant's arms were around Heather's neck. He also heard Heather screaming and hollering.

James Pope, Appellant's father, testified during Appellant's case-in-chief. On the evening in question, James drove Appellant to where Heather was staying. Appellant went inside the house to give Heather some money, and James stayed in the parked truck. After approximately twenty minutes, Appellant exited the house and Magan was yelling at him. James testified that Heather appeared upset and Robertson was carrying a gun. He claimed Heather jumped on Appellant from behind, and Appellant then grabbed her and put her on the ground. Then Robertson hit Appellant on the head with the butt of the gun. Appellant had his arm around Heather's chest telling her to "calm down." According to James, Heather was crying and talking, but did not appear to be struggling or fighting.

Appellant also testified on his own behalf. According to Appellant, his father drove him to Heather's after work. He claims he spent several hours talking with Heather and Magan's mother acted as a mediator. As Appellant left, he gave Heather a hug and said something that "set her off." According to Appellant, Heather started throwing a fit, and then Magan said it was time for him to leave. When they went outside, he "said something that set her off again. And that's when [Robertson] came back out and commenced to hitting me." Appellant claimed his arm was around Heather's chest, not her neck. He further testified that he did not attempt to cut off the circulation of her breath or blood. He acknowledged being able to see why someone may have thought he was choking her at the time, but that such perception would be a misunderstanding.

From the evidence presented, the jury reasonably could have determined that Appellant choked Heather by putting his arm around her neck, and that as a result, Heather was unable to breathe. In fact, the jury heard evidence that Heather suffered injuries as a result of Appellant's actions, including visible bruising. As sole judge of the weight and credibility of the evidence,

6

the jury bore the burden of resolving any conflicts in the evidence and deciding the credibility of the witnesses' testimony. *See* **Brooks**, 323 S.W.3d at 899; *see also* **Hooper**, 214 S.W.3d at 13. In doing so, the jury was entitled to believe the officers' testimony that Heather appeared unable to breathe, and suffered injuries to her neck, as a result of being choked by Appellant. *See* **Losoya v. State**, No. 07-17-000061-CR, 2018 WL 5094001, at *3 (Tex. App.—Amarillo Oct. 18, 2018, no pet) (mem. op., not designated for publication); **Hennard v. State**, No. 10-14-00324-CR, 2015 WL 5474796, at *3 (Tex. App.—Waco Sept. 17, 2015, no pet.) (mem. op., not designated for publication); *see also* **Brooks**, 323 S.W.3d at 899; *see also* **Hooper**, 214 S.W.3d at 13. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found each element of assault-family violence by impeding breath or circulation beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2)(A)-(B). We overrule Appellant's fourth issue.

### HEARING ON MOTION FOR NEW TRIAL

In his first issue, Appellant contends that the trial court improperly denied a hearing on his motion for new trial.

A defendant has a right to move for a new trial. *See* TEX. R. APP. P. 21; **Drew v. State**, 743 S.W.2d 207, 223 (Tex. Crim. App. 1987); **Cooks v. State**, 190 S.W.3d 84, 86–87 (Tex. App.—Houston [1st Dist.] 2005), *aff'd*, 240 S.W.3d 906 (Tex. Crim. App. 2007). A criminal defendant does not, however, have an "absolute right" to a hearing on his motion for new trial. **Hobbs v. State**, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). We review the denial of a hearing on a motion for new trial for an abuse of discretion and will reverse only if the trial court's ruling falls outside the zone of reasonable disagreement. **Smith v. State**, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). The failure to hear the motion constitutes an abuse of discretion only if the motion and accompanying affidavits (1) raise matters which are not determinable from the record, and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief. *Id.* at 338–39.

The defendant must support the motion for new trial with one or more affidavits that set forth the factual basis for the relief sought. *Id.*; *see* **Wallace v. State**, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). The defendant need not establish a prima facie case for a new trial; a hearing on the motion for new trial is warranted if the motion raises fact issues showing that reasonable

grounds exist for granting a new trial. *Wallace*, 106 S.W.3d at 107–08; *see* TEX. CODE CRIM. PROC. ANN. art. 40.001 (West 2018); *Hobbs*, 298 S.W.3d at 201–02. The hearing's purpose is to give the defendant an opportunity to fully develop the issues raised in his motion (1) so that the trial court can decide whether the case should be retried and (2) to prepare a record for presenting issues on appeal if relief is denied. *Smith*, 286 S.W.3d at 338.

The issue is preserved by a timely filed and presented motion for new trial that requests a hearing. *See Rozell v. State*, 176 S.W.3d 228, 230–31 (Tex. Crim. App. 2005) (issue of trial court's failure to hold hearing on motion for new trial not preserved where motion for new trial did not request a hearing). Once a defendant has done that, he has told the trial court what he wants at a time when the trial court is in a position to do something about it. *See Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009); *see also Rozell*, 176 S.W.3d at 230 ("Presenting the motion, along with a request for a hearing, is required to let the court know that the defendant wants the trial court to act on the motion and whether the defendant would like a hearing on the motion.").

Appellant's motion for new trial contains conclusory allegations of deficient performance by his trial attorney. Neither the motion nor the supporting affidavit contains any specific facts explaining how Appellant's trial attorney was ineffective. While an ineffective assistance of counsel claim can justify a hearing on a motion for new trial, the affidavit and motion must create a fact question warranting such a hearing. *See Montelongo v. State*, 631 S.W.3d 734, 738 (Tex. App.—El Paso 2021, no pet.). Affidavits that are conclusory in nature and unsupported by facts do not provide the requisite notice and no hearing is required. *Smith*, 286 S.W.3d at 339; *Griswold v. State*, No. 05-19-01561-CR, 2023 WL 4881390, at *8 (Tex. App.—Dallas Aug. 1, 2023, no pet. h.). As a result, the trial court did not err in declining to conduct a hearing on Appellant's motion for new trial. We overrule Appellant's first issue.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his third issue, Appellant urges he received ineffective assistance of counsel at trial.

### Standard of Review and Applicable Law

In reviewing an ineffective assistance of counsel claim, we follow the United States Supreme Court's two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986).

Under the first prong of the ***Strickland*** test, an appellant must show that counsel's performance was "deficient." ***Strickland***, 466 U.S. at 687, 104 S. Ct. at 2064; ***Tong v. State***, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." ***Strickland***, 466 U.S. at 687, 104 S. Ct. at 2064. To be successful, an appellant must "show that counsel's representation fell below an objective standard of reasonableness." ***Id.***, 466 U.S. at 688, 104 S. Ct. at 2064; ***Tong***, 25 S.W.3d at 712.

Under the second prong, an appellant must show that the "deficient performance prejudiced the defense." ***Strickland***, 466 U.S. at 687, 104 S. Ct. at 2064; ***Tong***, 25 S.W.3d at 712. The appropriate standard for judging prejudice requires an appellant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Strickland***, 466 U.S. at 694, 104 S. Ct. at 2068; ***Tong***, 25 S.W.3d at 712. The appellant must prove that his attorney's errors, judged by the totality of the representation and not by isolated instances of error, denied him a fair trial. ***Burruss v. State***, 20 S.W.3d 179, 186 (Tex. App.—Texarkana 2000, pet. ref'd).

It is not enough for the appellant to show that the errors had some conceivable effect on the outcome of the proceedings. ***Id.*** He must show that there is a reasonable probability that, but for his attorney's errors, the jury would have had a reasonable doubt about his guilt or that the extent of his punishment would have been less. *See **id.***; *see also **Bone v. State***, 77 S.W.3d 828, 837 (Tex. Crim. App. 2002). A reasonable probability is a probability sufficient to undermine confidence in the outcome. ***Strickland***, 466 U.S. at 694, 104 S. Ct. at 2068; ***Tong***, 25 S.W.3d at 712. An appellant claiming ineffective assistance of counsel must affirmatively prove prejudice from counsel's deficient performance. ***Mitchell v. State***, 989 S.W.2d 747, 748 (Tex. Crim. App. 1999).

Review of trial counsel's representation is highly deferential. ***Tong***, 25 S.W.3d at 712. "We engage in a 'strong presumption' that counsel's actions fell within the wide range of reasonably professional assistance." ***Id*** (citing ***Strickland***, 466 U.S. at 689, 104 S. Ct. at 2052.) It is a defendant's burden to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. ***Id.*** Moreover, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. ***Thompson v. State***, 9 S.W.3d 808, 813 (Tex. Crim.

App. 1999).  "[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).  Absent an opportunity for counsel to explain his actions, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).  Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffective assistance.  *Thompson*, 9 S.W.3d at 813.

**Discussion**

Appellant contends his trial counsel was deficient by failing to object to the indictment. According to Appellant, the indictment fails to appropriately plead recklessness.  He argues that by alleging he acted "recklessly," the State was required to allege in the indictment the acts it would rely upon to prove such recklessness. *See* TEX. CODE CRIM. PROC. ANN. art. 21.15 (West 2009).  However, the indictment states that Appellant "intentionally, knowingly, or recklessly cause[d] bodily injury to Heather Pope . . ."  An indictment that alleges a defendant acted recklessly is not insufficient if it fails to allege the act or acts relied upon to constitute recklessness if the indictment also alleges the defendant acted intentionally and/or knowingly. *State v. Castorena*, 486 S.W.3d 630, 635 (Tex. App.—San Antonio 2016, no pet.); *Crawford v. State*, 646 S.W.2d 936, 937 (Tex. Crim. App. 1983).  Thus, the indictment was not defective, and Appellant's trial counsel was not ineffective for failing to object.

Appellant further urges that trial counsel was ineffective in "failing to raise lack of capacity to negate elements of the charged offense."  He urges that multiple witnesses testified that Appellant may have suffered a concussion either from tripping over bicycles or being hit in the head with the butt of a gun.  According to Appellant, trial counsel was deficient for failing to investigate and raise the issue of lack of capacity.

But the record does not support Appellant's claim that trial counsel failed to conduct some investigation into Appellant's mental capacity. *See Richardson v. State*, 606 S.W.3d 375, 382–83 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (observing that, while "no reasonable trial attorney would wholly fail to investigate the facts of a case," record did not show that counsel was unaware of evidence against appellant, and thus, appellant could not prove ineffective assistance claim).  Furthermore, Appellant has not identified any particular information that further investigation would have revealed.  Thus, Appellant's allegations that

further investigation could have uncovered more relevant information concerning his mental capacity are purely speculative and do not support a conclusion that trial counsel's investigation was unreasonable under the circumstances. *See Andrus v. Tex.*, 140 S. Ct. 1875, 1881, 207 L. Ed. 2d 335 (2020) ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."); *Cain v. State*, 525 S.W.3d 728, 732 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (holding counsel's alleged failure to object to required PSI evaluations for mental health and substance abuse issues did not support ineffective assistance claim on direct appeal given silent record as to reasons for failure to object, also rejected argument that no strategy could support failure to object, and finally concluded that defendant failed to meet prejudice prong); *Castello v. State*, 555 S.W.3d 612, 618-19 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (same).

In summary, the record in this direct appeal fails to support that counsel had no potential viable trial strategy sufficient to overcome the presumption of competent and adequate assistance in the exercise of reasonable professional judgment. *See Lopez v. State*, 343 S.W.3d 137, 142-43 (Tex. Crim. App. 2011) (stating that "court must not engage in retrospective speculation" and that "[i]t is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence"). Thus, we hold that the record contains no evidence to rebut the presumption that, based on the totality of the representation, trial counsel performed competently. *See Lopez*, 343 S.W.3d at 142-43; *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007); *Thompson*, 9 S.W.3d at 81. Furthermore, we hold that, from the record before us, even if counsel's performance was deemed deficient, the evidence reflects no reasonable probability that the result would have been different but for the deficiency. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Tong*, 25 S.W.3d at 712.

Appellant's third issue is overruled.

## ADDITIONAL DISCOVERY

In his second issue, Appellant contends the trial court abused its discretion in denying his request for additional appellate discovery.

Appellant's appointed appellate counsel filed a motion for discovery under Article 39.14 of the Texas Code of Criminal Procedure. In his motion, he requested all evidence in the State's

possession. When the State refused, Appellant filed a motion to compel. At the hearing on the motion to compel, Appellant's counsel stated that he wanted all evidence in the State's possession used to convict Appellant. The State argued that it tendered all evidence to Appellant's trial counsel and, as a result, it complied with its duty to provide evidence under Article 39.14. At the conclusion of the hearing, the trial court granted the motion to compel in part and ordered the State to turn over any and all exculpatory evidence. It denied the motion to compel regarding pretrial matters and material that was previously given to trial counsel.

Article 39.14 disclosure requirements are triggered only after the State receives a timely request from the defendant. *Glover v. State*, 496 S.W.3d 812, 815 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). Absent a discovery request, the State's affirmative duty to disclose evidence extends only to exculpatory information. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(h) (West Supp. 2022) ("Notwithstanding any other provision of this article, the state shall disclose to the defendant any exculpatory, impeachment or mitigating document, item or information ... that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged"). However, the current version of Article 39.14 removes procedural hurdles to obtaining discovery, broadens the categories of discoverable evidence, and expands the State's obligation to disclose. *Watkins v. State*, 619 S.W.3d 265, 278 (Tex. Crim. App. 2021). Further, the State's new, broader obligations apply prior to trial, continue after conviction, and must be complied with quickly. *Id.* Even so, the duty following conviction only applies to newly discovered evidence regarding exculpatory circumstances. TEX. CODE CRIM. PROC. ANN. art. 39.14(k). Thus, the trial court was not required to compel the State to produce evidence post-conviction, outside of newly discovered evidence.

Furthermore, to the extent Appellant's complaint relates to the disclosure of information already known to Appellant, the State has no affirmative duty to disclose such information. *Garcia v. State*, No. 13-15-00527-CR, 2017 WL 3530926, at *3 (Tex. App.—Corpus Christi Aug. 17, 2017, no pet.) (mem. op., not designated for publication); *see Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002) (explaining that State had no duty to disclose existence of letter written by the defendant); *Havard v. State*, 800 S.W.2d 195, 204 (Tex. Crim. App. 1989) (concluding that State had no duty to disclose existence of the defendant's own statement to law enforcement contained in an offense report).

Because Appellant had already obtained the discovery via his trial counsel and because the State was under no duty to disclose evidence post-conviction, aside from newly discovered evidence, the trial court did not abuse its discretion in partially denying the motion to compel. We overrule Appellant's second issue.

## DISPOSITION

Having overruled Appellant's four issues, we *affirm* the trial court's judgment.

GREG NEELEY
Justice

Opinion delivered September 20, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

13



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 20, 2023**

**NO. 12-22-00225-CR**

**SHAWN LANE POPE,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 349th District Court

of Anderson County, Texas (Tr.Ct.No. 349CR-19-34162)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*